In re The PEOPLE of the State of Colorado, Plaintiff

v.

Aaron THOMPSON, Defendant.

No. 07SA339.

Supreme Court of Colorado, En Banc.

April 7, 2008.

Rehearing Denied April 28, 2008.

Levine Sullivan Koch & Schulz LLP, Thomas B. Kelley, Steven D. Zansberg, Christopher P. Beall, Denver, Colorado, Attorneys for Non–Party Petitioners Denver Post Corporation and The Associated Press.

John W. Suthers, Attorney General, Daniel D. Domenico, Solicitor General, Melody Mirbaba, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent Honorable J. Mark Hannen.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

We issued a rule to show cause to determine whether the trial court erred in redacting portions of Aaron Thompson's grand jury indictment, which contained extensive factual allegations, prior to making the indictment open for public inspection. We hold that the Colorado Criminal Justice Records Act ("the

CCJRA"), sections 24–72–301 to –309, C.R.S. (2007), requires the indictment to be released for public inspection in its entirety, subject only to the deletion of identifying information of any alleged sexual assault victims. Therefore, we make the rule absolute.

## II. Facts and Procedural History

Following a grand jury investigation concerning the disappearance of Thompson's daughter Aaroné, the grand jury returned an indictment against Thompson. The indictment alleged sixty counts against Thompson, including numerous child abuse and assault charges, and contained extensive factual allegations based on police investigation and interviews with the alleged victims. In great detail, the factual allegations described various events that occurred in the Thompson home, including a possible sexual assault by an unindicted person, going far beyond the "essential facts" that must be included in a grand jury indictment.

On May 16, 2007, the prosecution filed the indictment with the trial court and, at the same time, moved to seal the indictment. The trial court granted the motion and sealed the indictment from public access. At a hearing the next day, the Denver Post Corporation ("the Denver Post") requested that the indictment be unsealed, and Thompson objected. The trial court unsealed the indictment but ordered that the identity of the victims and the factual allegations underlying the charged offenses be redacted. Subsequently, the redacted indictment was made available for public inspection.

The Denver Post then filed a motion to unseal the factual allegations and identities of any deceased victims contained in the indictment. In its motion, the Denver Post argued that there is a "strong presumption of public access" to criminal case documents under the common law. Additionally, the Denver Post maintained that since Thompson's case is a matter of public concern, the First Amendment of the United States Constitution and article II, section 10 of the Colorado Constitution require public access to documents in Thompson's court file.

At a hearing on June 22, 2007, the trial court denied the Denver Post's motion. The court noted that an indictment is a record of official action under the CCJRA and observed that the CCJRA gives the court the authority to limit access to criminal justice records where disclosure would be contrary to the public interest. The trial court then ruled that the identity of the victims would remain sealed to protect their privacy and that the factual allegations contained in the indictment would also remain sealed because they might not be admissible in subsequent proceedings and their dissemination might present a substantial risk to selecting a fair and impartial jury.

The Denver Post subsequently filed another motion requesting that the factual allegations be unsealed. In response to the motion, the trial court entered a written order on October 29, 2007, ruling that the names of the alleged victims, as well as the factual allegation contained in the indictment, should remain sealed.

Following this ruling, the Denver Post filed a petition for a rule to show cause as to why the trial court's June 22, 2007 order and October 29, 2007 order should not be vacated. The Associated Press joined the petition. In the petition, the Denver Post [1] challenges the trial court's orders sealing the factual allegations contained in the indictment. We issued the rule to show cause and now make the rule absolute.

## III. Analysis

■ Relief under C.A.R. 21 is extraordinary in nature and lies entirely within our discretion. C.A.R. 21. Under C.A.R. 21, we may exercise our original jurisdiction when the trial court exceeded its jurisdiction or abused its discretion and a remedy on appeal would be inadequate. *See id.; Morgan v. Genesee Co.*, 86 P.3d 388, 391 (Colo.2004). We have previously exercised our original jurisdiction to address public access to court documents. *See People v. Bryant*, 94 P.3d

---

1. Since The Associated Press joined the petition, all references to the Denver Post also include The Associated Press.

624, 625–26 (Colo.2004); *Times–Call Publ'g Co. v. Wingfield,* 159 Colo. 172, 173–74, 410 P.2d 511, 511–12 (1966).

The Denver Post argues that the trial court's orders of June 22, 2007, and October 29, 2007, sealing factual allegations of Thompson's grand jury indictment, are unconstitutional under both the United States and Colorado Constitutions. Specifically, the Denver Post maintains that there is a constitutional right of public access to grand jury indictments and that the trial court incorrectly applied the constitutional standard when it refused to unseal the factual allegations. Thus, the Denver Post requests that we direct the trial court to immediately make available to the Denver Post and the public an unredacted copy of the grand jury indictment.

■ It is well settled that we will refrain from resolving constitutional questions or from making determinations regarding the extent of constitutional rights "unless such a determination is essential and the necessity of such a decision is clear and inescapable." *Denver Publ'g Co. v. Bd. of County Comm'rs,* 121 P.3d 190, 194 (Colo.2005). Therefore, before we proceed to any constitutional analysis, we must examine statutory provisions concerning public access to court documents. *See id.*

In Colorado, the General Assembly chose to codify the principles of access to public records in the Public Records Act. *See Pierce v. St. Vrain Valley Sch. Dist. RE–1J,* 981 P.2d 600, 605 (Colo.1999). The CCJRA, a part of the Public Records Act, addresses access to and disclosure of criminal justice records. *See Office of the State Court Adm'r v. Background Info. Servs.,* 994 P.2d 420, 426 (Colo.1999). Thus, we consider the application of the CCJRA to Thompson's indictment.

■ We review questions of law concerning the construction and application of the CCJRA de novo. *Harris v. Denver Post Corp.,* 123 P.3d 1166, 1170 (Colo.2005). Our main task in construing statutes is to ascertain and give effect to the intent of the General Assembly. *In re Marriage of Ikeler,* 161 P.3d 663, 666 (Colo.2007). We determine

the General Assembly's intent from the plain language of the statute. *Pulsifer v. Pueblo Prof'l Contractors, Inc.,* 161 P.3d 656, 658 (Colo.2007). If the plain language is ambiguous or conflicts with other provisions of the statute, we may look to other aids to statutory construction, such as the end to be achieved by the statute. *Bostelman v. People,* 162 P.3d 686, 689–90 (Colo.2007). In doing so, we read the statute as a whole and interpret it to give consistent, harmonious, and sensible effect to all its parts. *Ikeler,* 161 P.3d at 666–67.

The CCJRA defines criminal justice records as documentary materials of criminal justice agencies. *See* § 24–72–302(4). Thus, criminal justice records include:

> [A]ll books, *papers,* cards, photographs, tapes, recordings, *or other documentary materials, regardless of form or characteristics, that are made, maintained, or kept by any criminal justice agency* in the state for use in the exercise of functions required or authorized by law or administrative rule, including but not limited to the results of chemical biological substance testing. . . .

*Id.* (emphasis added). However, the CCJRA distinguishes between two types of criminal justice records—records of official actions and other criminal justice records—and prescribes different regimens of public access to those records. *See* §§ 24–72–301(2), –303(1), –304(1); *see also Background Info. Servs.,* 994 P.2d at 427.

Generally, the CCJRA mandates disclosure of records of official actions. Pursuant to section 24–72–302(7), "official action" includes an indictment. § 24–72–302(7). Records of official actions *"shall be open for inspection by any person at reasonable times, except as provided in [the CCJRA]* or as *otherwise provided by law."* § 24–72–303(1) (emphasis added). Thus, a record of official action must be available for public inspection unless one of the two exceptions applies: (1) non-disclosure is required by the CCJRA, or (2) non-disclosure is required by other law. *See id.* Consequently, the CCJRA does not grant any criminal justice agency, including a court, any discretion as to whether to dis-

close a record of official action in its entirety, in part, or not at all. *See id.*

In contrast, disclosure of other criminal justice records is discretionary. Section 24–72–304(1) provides that *"[e]xcept for records of official actions which must be maintained and released pursuant to [the CCJRA], all criminal justice records, at the discretion* of the official custodian, *may be open* for inspection by any person at reasonable times...."* § 24–72–304(1) (emphasis added). In sum, while the CCJRA leaves access to other criminal justice records to the discretion of the criminal justice agencies that are the official custodians of those records, it mandates that records of official actions be available for public inspection, subject to exceptions set forth in the CCJRA or by other law. *See* §§ 24–72–301, –303(1); *see also Harris,* 123 P.3d at 1171; *Background Info. Servs.,* 994 P.2d at 427 (recognizing the distinction between records of official actions and other criminal justice records).

Such an exception to the mandatory disclosure of records of official actions is provided by section 24–72–304(4). Specifically, section 24–72–304(4)(a) requires that the identity of sexual assault victims be deleted from criminal justice records prior to disclosure:

The name and any other *information that would identify any victim of sexual assault* or of alleged sexual assault or attempted sexual assault or alleged attempted sexual assault *shall be deleted from any criminal justice record prior to the release* of such record to any individual or agency other than a criminal justice agency *when such record bears the notation "SEXUAL ASSAULT"* prescribed by this subsection (4).

§ 24–72–304(4)(a) (emphasis added). Therefore, a criminal justice agency releasing a record of official action or other criminal justice record bearing the notation "SEXUAL ASSAULT" must remove identifying information of any sexual assault victims. *Id.*

Although the first three subsections of section 24–72–304 concern access to criminal

justice records other than records of official actions, subsection (4) applies to both records of official actions and other criminal justice records. Subsection (4) requires that identifying information of any sexual assault victim be removed from *"any* criminal justice records"; unlike the first three subsections, it does not exempt records of official actions.[2] *See id.* Subsection (4) also mandates that records of official actions and files containing such records must bear the notation "SEXUAL ASSAULT" when they concern certain sexual offenses:

A criminal justice agency or custodian of criminal justice records *shall make the notation "SEXUAL ASSAULT"* on *any record of official action* and on the file containing such record *when the official action is related to* the commission or the alleged commission of any of the following [sex] offenses....

§ 24–72–304(4)(b)(I) (emphasis added). The notation "SEXUAL ASSAULT" means that identifying information of a sexual assault victim must be removed from the record prior to its release. *See* § 24–72–304(4)(a). Thus, the requirement to include the "SEXUAL ASSAULT" notation on records of official actions demonstrates that the General Assembly intended the prohibition against disclosure of identity of sexual assault victims to apply to both records of official actions and other criminal justice records. Therefore, we conclude that section 24–72–304(4) requires that identifying information of sexual assault victims be deleted from records of official actions as well as other criminal justice records prior to their disclosure to the public. *Accord Background Info. Servs.,* 994 P.2d at 427 n. 6 ("[T]he names of sexual assault victims must be deleted from [criminal justice] records prior to public inspection.").

Having examined the relevant provisions of the CCJRA, we now turn to Thompson's grand jury indictment. Because a grand jury indictment is a record of official action, the trial court could not redact any of the

---

**2.** Subsection (1) of section 24–72–304 provides, *"Except for records of official actions* which must be maintained and released pursuant to [the CCJRA], *all criminal justice records,* at the discre-

tion of the official custodian, *may be open for inspection* ...." § 24–72–304(1) (emphasis added).

extensive factual allegations contained in the indictment, unless required otherwise by section 24–72–304(4)(a) or by other law. *See* § 24–72–303(1).

Here, section 24–72–304(4)(a) mandates the deletion of identifying information of a possible sexual assault victim. Although Thompson's indictment does not bear the notation "SEXUAL ASSAULT," the factual allegations supporting the charges against Thompson suggest that an unindicted person may have committed a sexual assault. Thus, while the indictment does not charge Thompson with that offense, it is sufficiently "related to" the possible sexual assault for the purposes of victim protection mandated by section 24–72–304(4). *See* § 24–72–304(4)(b)(I) ("A criminal justice agency or custodian of criminal justice records shall make the notation 'SEXUAL ASSAULT' on any record of official action and on the file containing such record *when the official action is related to the commission* or the alleged commission *of any ... [sex] offenses* [listed in section 24–72–304(4)(b)(I) ].") (emphasis added). Consequently, the CCJRA requires that Thompson's entire indictment be made available for public inspection, subject to the deletion of identifying information of any alleged sexual assault victims. *See* §§ 24–72–301(2), –303(1), –304(4)(a).

Nevertheless, the respondent judge argues that because the factual allegations in the indictment far exceed the essential facts of the charged offenses, the Denver Post seeks access to information that is typically contained in confidential grand jury transcripts. He also posits that since the redacted portions of the indictment are not a necessary part of the indictment, they should be treated as a record of grand jury proceedings rather than as a public document. We disagree.

■  A grand jury is an investigatory body and therefore conducts its proceedings in secrecy. *See P.R. v. Dist. Court,* 637 P.2d 346, 350 (Colo.1981). Because grand jury secrecy is intended to prevent disclosure of what transpired before the grand jury, the confidentiality extends to witness testimony and other evidence presented to the grand jury, as well as transcripts of the grand jury proceedings. *See* § 16–5–204(4)(f), C.R.S. (2007); Crim. P. 6.4; *Granbery v. Dist. Court,* 187 Colo. 316, 321–22, 531 P.2d 390, 393–94 (1975). In contrast, a grand jury indictment is presented in open court and is therefore public. *See* Crim. P. 7(a)(1). A grand jury indictment must contain, among other requisites, essential facts that constitute the charged offense. *See* Crim. P. 7(a)(2); *People v. Tucker,* 631 P.2d 162, 163 (Colo.1981).

Irrespective of the extent of the factual allegations included in Thompson's indictment, the allegations are not covered by grand jury secrecy and do not fall within the CCJRA's exception permitting non-disclosure of records of official actions "as otherwise provided by law." Although Crim. P. 7(a)(2) provides that an indictment must contain "essential facts" constituting the charged offense, it does not limit the extent of the factual allegations that may be included in an indictment. *See* Crim. P. 7(a)(2). Neither does Crim. P. 7 contain any requirement that only the "essential facts" be made public; to the contrary, the entire indictment is presented in open court. *See* Crim. P. 7(a)(1).

Here, the allegations contained in the indictment presented facts and circumstances supporting the charges against Thompson.[3] While the allegations were based on the evidence presented to the grand jury, the allegations themselves are *not* grand jury evidence and therefore are not protected by grand jury secrecy.[4] Consequently, however excessive the factual allegations in Thompson's indictment are, we reject the argument that they are covered by grand jury secrecy

---

3.  The allegations contained exhaustive narratives based on witnesses' statements and police reports describing events surrounding Aaroné's disappearance, the subsequent police investigation, Thompson's family circumstances, and the treatment of Aaron é and other children in the Thompson home.

4.  Grand jury evidence protected by grand jury secrecy includes, for example, transcripts of witnesses' testimony. *See* Crim. P. 6.2.

and therefore excepted from the mandatory disclosure of records of official actions.

Although the CCJRA's right of public access to records of official actions may result in the circumvention of grand jury secrecy in cases where, as here, the indictment contains factual information that transpired in the grand jury proceedings, the plain language of sections 24–72–301(2) and 24–72–303(1) requires disclosure nonetheless. The General Assembly may well have intended this result because a grand jury indictment constitutes official action accusing an individual of a specific violation of the law, for which the individual may be tried and subsequently convicted; therefore, the public has a strong interest in examining the indictment. However, to the extent the General Assembly did not intend that a grand jury indictment be open to public inspection regardless of the extent of the information it contains, it is for the General Assembly, and not for this court, to amend the statute. *See Nye v. Dist. Court,* 168 Colo. 272, 275, 450 P.2d 669, 671 (1969).

Therefore, we hold that the CCJRA requires that Thompson's indictment, in its entirety, be made available for public inspection, subject to the deletion of identifying information of any alleged sexual assault victims. Since the Denver Post does not seek the disclosure of the identities of any alleged victims, including any victims of sexual assault, we need not address the Denver Post's constitutional arguments.

## IV. Conclusion

We make the rule to show cause absolute. We remand the case to the trial court with the directions to delete from the indictment identifying information of any alleged sexual assault victims and to make the indictment, subject to such deletion, open for public inspection.