In re FREEDOM COLORADO INFORMATION, INC., a Delaware corporation doing business as The Gazette; and Dennis Huspeni, a Colorado citizen, Plaintiffs

v.

EL PASO COUNTY SHERIFF'S DEPARTMENT; and Terry Maketa, in his official capacity as the El Paso County Sheriff, an elected official of El Paso County, Colorado, a political subdivision, Defendants

and

John Does I and II, Intervenors.

No. 08SA151.

Supreme Court of Colorado, En Banc.

Nov. 10, 2008.

Levine Sullivan Koch & Schulz, L.L.P., Steven D. Zansberg, Adam M. Platt, Denver, Colorado, Attorneys for Plaintiffs.

Charles C. Greenlee, El Paso County Sheriff's Office, Colorado Springs, Colorado, Attorney for Defendants.

James A. Reed, P.C., James A. Reed, Colorado Springs, Colorado, Attorneys for Intervenors John Does I & II.

Justice HOBBS delivered the Opinion of the Court.

Pursuant to C.A.R. 21, we accepted jurisdiction in this original proceeding to consider whether the District Court for El Paso County lacked subject matter jurisdiction or erred as a matter of law by applying the wrong legal standard in ordering the release of the El Paso County Sheriff's internal affairs investigation file ("the file") concerning former deputy sheriff Shawn Moncalieri. The petitioners are two brothers ("John Does") who were wrongfully arrested twice because of this officer's malfeasance. Following the internal affairs investigation, El Paso County Sheriff Terry Maketa ("Sheriff"), terminated Moncalieri's employment. The John Does obtained $20,000.00 each as a settlement from El Paso County for release of any claims they might have against the county for their wrongful arrests.

The John Does also sought relief from the El Paso County District Court in the form of sealing the records of "official action[s]" pertaining to their arrest, pursuant to section 24-72-308, C.R.S. (2008), of the Colorado Criminal Justice Records Act ("CCJRA"). In that action, which is separate from the one before us, El Paso County District Court Judge Ronald Crowder ordered the sealing of all the records in the four criminal cases involving the John Does, as well as the two civil actions in which the John Does obtained the sealing order.

Pursuant to CCJRA sections 24-72-304 and -305, C.R.S. (2008), The Gazette newspaper of Colorado Springs sought to inspect the Sheriff's internal affairs investigation file pertaining to the discharged deputy sheriff. Because the file does not fall within the definition of an "official action" as defined by CCJRA section 24-72-302(7), C.R.S. (2008), inspection of this file is subject to the exercise of the Sheriff's sound discretion under sections 24-72-304 and -305 of the CCJRA. *Harris v. Denver Post,* 123 P.3d 1166, 1175 (Colo.2005). The Sheriff refused to allow inspection of the file.

Under CCJRA section 24-72-305(7), C.R.S. (2008), The Gazette initiated the case now before us by applying to the El Paso County District Court for an order to show cause why the file should not be made available for inspection. Judge G. David Miller heard the case and ordered the release of the entire file, including the names of the John Does, redacting only the addresses, social security numbers, and dates of birth of individuals named in the file.

Upon petition by the John Does, we issued our order to show cause, which had the effect of prohibiting release of the file pending our review of the district court's decision. The John Does contend Judge Miller lacked jurisdiction to release the Sheriff's internal affairs file to The Gazette. We disagree.

Section 24-72-308(1)(c), C.R.S. (2008), of the CCJRA, which addresses sealing records of "official action," assigns the role of balancing the public and private interests involved to the district court. Judge Crowder conducted such balancing before sealing the four criminal cases and two civil cases.

In contrast, the file is not a record of "official action," but remains a criminal justice record under the CCJRA, the public disclosure of which is subject to discretion of the Sheriff, not the court. Pursuant to sections 24-72-304 and -305, the Sheriff must balance the public and private interests involved in the inspection request and determine whether to allow full disclosure, redacted disclosure, or no disclosure of the record. *Harris,* 123 P.3d at 1174-75.

■ We hold that the El Paso County District Court erred as a matter of law by applying the wrong legal standard in performing the balancing of public and private interests required by the CCJRA to be performed by the Sheriff as custodian of the file. The balancing role we described in *Harris* entails weighing the array of interests involved in the inspection request and making an inspection determination supported by an adequate rationale. *Id.* at 1174. Because the Sheriff did not properly perform his role in this CCJRA inspection request case, hindering the court's judicial review role, the district court should have ordered him to do so. Consequently, we make our rule absolute and order the El Paso County District Court to return this matter to the Sheriff for an inspection determination that complies with the CCJRA and our decision in *Harris.*

## I.

Deputy Sheriff Shawn Moncalieri was the subject of six internal affairs investigations during his approximately four years of service at the Sheriff's office. He was terminated on March 6, 2007, following an internal affairs investigation of his role in a double set of wrongful arrests of two John Does, brothers, aged 18 and 20.

The internal affairs investigations file containing the details of these wrongful arrests has been submitted under seal to this court, as it was to the trial court. These documents reveal Moncalieri's malfeasance that led to the wrongful arrest of the John Does on two separate occasions. Over five-hundred pages of the nearly one-thousand page internal affairs file in this case concern Moncalieri's role in the arrests of the John Does.

On February 28, 2007, a week before Moncalieri's termination, the legal affairs reporter for The Gazette, Dennis Huspeni, filed a request with the Sheriff to inspect the internal affairs investigations file, pursuant to the Colorado Open Records Act ("CORA"), sections 24–72–202 to –206, C.R.S. (2008), and the CCJRA, sections 24–72–301 to –309, C.R.S. (2008). Several weeks later, Huspeni made a second request for inspection of the file. The Sheriff responded that he was awaiting Moncalieri's claim to any privacy interest before making an inspection decision.

Moncalieri described his privacy interest in an April 10, 2007, sworn affidavit. He stated he was told during the internal affairs investigation that the information he "was questioned about would be confidential and not be released to the public," and that he "made statements about [his] personal life that [he] would not have made if [he] had known that these statements were going to be published." Two days after Moncalieri submitted his affidavit, the Sheriff denied The Gazette's request for inspection of the file in a four sentence letter:

> You requested to be allowed to inspect the Internal Affairs files of former Deputy Moncalieri on February 28, 2007 and March 22, 2007. Mr. Moncalieri, through his attorney, Richard Radabaugh, sent us a letter stating his privacy interests in these files. I have briefed my client on Mr. Moncalieri's submission. My client has decided not to make Mr. Moncalieri's Internal Affairs files available for inspection or release.

On August 3, 2007, Judge Crowder sealed the John Does' arrest and criminal records in the four criminal cases involving their double set of arrests, as well as the John Does' two civil actions in which they each obtained the sealing relief. Judge Crowder found that "the harm to [the] privacy ... or dangers of unwarranted adverse consequences" to each John Doe "outweigh[s] the public interest in retaining the record."

On April 15, 2008, after the denial of another Gazette reporter's request for the names of the John Does in connection with an inspection request for the county settlement records,[1] The Gazette filed its petition with the district court in this case for a show cause order seeking inspection of the file concerning Moncalieri. District Court Judge Miller issued the show cause order, set a hearing for April 23, 2008, and conducted an *in camera* review of the file. Prior to the April 23 hearing, Moncalieri's attorney had filed an affidavit from the former deputy objecting to the records production on privacy grounds. Also prior to the hearing, the court granted the John Does' and the Board of County Commissioners' motions to intervene in this case.

The Sheriff's response to the district court's show cause order did not demonstrate that he balanced the public and private interests involved in The Gazette's inspection request. Instead, the response repeatedly referred to what the Sheriff assumed to be the court's responsibility to conduct a *Martinelli* analysis, which, as we discuss below, is inapplicable to this CCJRA case. *Martinelli v. District Court*, 199 Colo. 163, 612 P.2d 1083 (1980).

On April 28, 2008, Judge Miller ordered the release of all "completed and closed Internal Affairs Investigation reports concerning El Paso County Sheriff's Department Deputy Shawn Moncalieri." The order required that "personal information pertaining to Moncalieri, the John Does, and all other witnesses or complainants in the investigations" be redacted. Judge Miller, however, did not order the redaction of the names of the John Does, Moncalieri, or any of the witnesses interviewed by the Sheriff's Internal Affairs Unit.

Under the CCJRA, the Sheriff is required to balance the public and private interests. He did not do so here. Instead, Judge Miller performed the balancing that was the responsibility of the Sheriff. To frame his analysis, Judge Miller employed the factors

---

1. El Paso County's records relating to the payment of settlement money is the subject of another civil action presently pending in the El Paso County District Court. That case is not before us, and we do not address it. The county has disclosed a redacted version of the settlement document, redacting the names of the John Does.

set forth in *Martinelli*, 199 Colo. at 173–74, 612 P.2d at 1091: (1) whether there was an asserted expectation of confidentiality; (2) whether the information is "highly personal and sensitive" and "its disclosure would be offensive and objectionable to a reasonable person of ordinary sensibilities;" and, (3) whether there is a "compelling state interest" in disclosure.

Judge Miller observed that, while Moncalieri and the John Does might have expected confidentiality in the internal affairs investigation, no "highly personal and sensitive" information existed in the file. Judge Miller concluded that a "compelling state interest" existed in The Gazette's inspection of the file because: (1) the public has a legitimate interest in knowing how law enforcement officers do their jobs, and (2) because the John Does received cash payments from El Paso County connected with their false arrests. Specifically, he declared:

> The public has a legitimate interest in knowing how law enforcement officers behave while doing their jobs, and how their superiors respond when claims of misconduct are raised and later validated by investigation. That interest becomes absolutely compelling when taxpayer dollars are spent to pay for the misdeeds of public servants ... [and John Does' confidentiality interest] was subordinated to the public interest of full disclosure when they chose to hire an attorney and assert a claim for monetary damages out of taxpayer funds.

Judge Miller rejected a request for attorney's fees under the CCJRA because the Sheriff's refusal to release the requested documents was not arbitrary and capricious.

## II.

We hold that the El Paso County District Court erred as a matter of law by applying the wrong legal standard in performing the balancing of public and private interests required by the CCJRA to be performed by the Sheriff as custodian of the file. The balancing role we described in *Harris* entails weighing the array of interests involved in the inspection request and making an inspection determination supported by an adequate rationale. *Id.* at 1174. Because the Sheriff did not properly perform his role in this CCJRA inspection request case, hindering the court's judicial review role, the district court should have ordered him to do so. Consequently, we make our rule absolute and order the El Paso County District Court to return this matter to the Sheriff for an inspection determination that complies with the CCJRA and our decision in *Harris*.

### A. Standard of Review

■■■ We review de novo questions of law concerning the application and construction of statutes. *Harris*, 123 P.3d at 1170; *People v. Thompson*, 181 P.3d 1143, 1145 (Colo. 2008), *reh'g denied* (Apr. 28, 2008). When a request is made to inspect a particular criminal justice record that is not a record of an "official action," the decision whether to grant the request is consigned to the exercise of the custodian's sound discretion under sections 24–72–304 and –305, C.R.S. (2008). The district court reviews the custodian's determination for abuse of discretion. *Harris*, 123 P.3d at 1175; *see People v. Bushu*, 876 P.2d 106, 107 (Colo.App.1994). In turn, we review de novo whether the district court applied the correct legal standard to its review of the custodian's determination.[2] *Id.* We review questions of law de novo. *Colo. Dep't of Revenue v. Garner*, 66 P.3d 106, 109 (Colo.2003). Whether a trial court or the court of appeals has applied the correct legal

---

2. The El Paso County Sheriff's Office is a criminal justice agency and the Sheriff, as agency-head, is the custodian of that agency's records. The CCJRA defines the "official custodian" as "any officer or employee of the state or any agency, institution, or political subdivision thereof who is responsible for the maintenance, care, and keeping of criminal justice records, regardless of whether such records are in his actual personal custody and control." § 24–72–302, C.R.S. (2008). In *Harris v. Denver Post*, we de-

cided that "a sheriff's department is a 'criminal justice agency' under the CCJRA" and that the department is "the 'official custodian' of 'criminal justice records' that 'are made, maintained, or kept ... for use in the exercise of functions required or authorized by law or administrative rule'" (internal citations omitted). 123 P.3d 1166, 1173 (Colo.2005) (citing § 24–72–302(4) & (8), C.R.S. (2005)); *Johnson v. Colo. Dep't of Corr.*, 972 P.2d 692, 694 (Colo.App.1998).

standard to the case under review is a matter of law.

The CCJRA differentiates between two categories of records: (1) records of "official action," and (2) all other criminal justice records, each possessing its own "regimens of public access to those records." § 24–72–301, C.R.S. (2008); *Thompson,* 181 P.3d at 1145; *see* §§ 24–72–301(2), –303(1), –304(1), C.R.S. (2008); *Office of State Court Adm'r v. Background Info. Servs., Inc.,* 994 P.2d 420, 427 (Colo.1999).

Section 24–72–302(4), C.R.S. (2008), defines criminal justice records as:

all books, papers, cards, photographs, tapes, recordings, or other documentary materials, regardless of form or characteristics, *that are made, maintained, or kept by any criminal justice agency in the state for use in the exercise of functions required or authorized by law or administrative rule,* including but not limited to the results of chemical biological substance testing to determine genetic markers conducted pursuant to sections 16–11–102.4, 16–11–104, 16–11–204.3 and 16–11–308(4.5), C.R.S.

(Emphasis added).

Section 24–72–302(7), C.R.S. (2008), defines records of "official action" as:

an arrest; indictment; charging by information; disposition; pretrial or posttrial release from custody; judicial determination of mental or physical condition; decision to grant, order, or terminate probation, parole, or participation in correctional or rehabilitation programs; and any decision to formally discipline, reclassify, or relocate any person under criminal sentence.

In contrast to records of "official action," which under section 24–72–302(7), C.R.S. (2008), "shall be open for inspection by any person at reasonable times, except as provided in [the CCJRA] or as otherwise provided by law," inspection of all other criminal justice records is consigned to the custodian's exercise of sound discretion. § 24–72–303(1), C.R.S. (2008); *see Thompson,* 181 P.3d at 1145–46 (concluding that grand jury indictments are records of "official action"); *Har-*

*ris,* 123 P.3d at 1168, 1171 (concluding that recordings seized from private homes by virtue of search warrants and for purposes of criminal investigation are "criminal justice records" subject to the CCJRA, but are not records of "official action," and instead are subject to the custodian's exercise of sound discretion); *Background Info. Servs.,* 994 P.2d at 427 & n. 6 (noting that "the General Assembly has clearly made certain portions of criminal case files available to the public, has reserved to the official custodian discretion as to other portions of criminal case files, and has barred the release of other portions" such as the names of sexual assault victims).

The court performs the public and private interests balancing function in regard to the sealing of "official action[s]" pursuant to section 24–72–308(1)(c), C.R.S. (2008), whereas the custodian performs that function in regard to criminal justice records inspection requests consigned to the custodian's sound discretion under sections 24–72–304 and –305, C.R.S. (2008).

The General Assembly has described this public and private interests balancing function as a weighing process involving the "public interest" versus the "harm to ... privacy ... or dangers of unwarranted adverse consequences." § 24–72–308(1)(c), C.R.S. (2008). The CCJRA record must be open for inspection unless the privacy interest or dangers of adverse consequences "outweigh" the public interest. *See id.* In *Harris,* we determined that the General Assembly intended for this standard of balancing to apply not only to courts when addressing "official actions," but also to all custodians who have discretionary authority regarding the inspection of criminal justice records under sections 24–72–304 and –305, C.R.S. (2008), including sheriffs. 123 P.3d at 1174–75. Indeed, section 24–72–305(5) favors making the record available for inspection unless the custodian, in exercising his or her sound discretion, finds "disclosure would be contrary to the public interest."

**B. Duty to Balance Public and Private Interests When Inspection Is Consigned to the Custodian's Discretion**

In creating a class of criminal justice records, the inspection of which is subject to the

custodian's exercise of sound discretion, the General Assembly intended the custodian to engage in balancing the public and private interests in the inspection request. *See* § 24–72–301(2), C.R.S. (2008) (providing for the discretionary release of criminal justice records other than records of "official action"); *Harris*, 123 P.3d at 1175 (construing the legislature's intent to extend the balancing test of section 24–72–308(1)(c), C.R.S. (2008), for "official action[s]" to all criminal justice records requests).

■ The custodian must consider the pertinent factors, which include: the privacy interests of individuals who may be impacted by a decision to allow inspection; the agency's interest in keeping confidential information confidential; the agency's interest in pursuing ongoing investigations without compromising them; the public purpose to be served in allowing inspection; and any other pertinent consideration relevant to the circumstances of the particular request. *Harris*, 123 P.3d at 1174.

■ While Colorado's two open government laws, CORA and the CCJRA, generally favor broad disclosure of records, we have construed the CCJRA to favor somewhat less broad disclosure. The legislative policy regarding access to criminal justice records under the CCJRA is more limited than access to public records under CORA. *Harris*, 123 P.3d at 1171; *see Wick Commc'ns Co. v. Montrose County Bd. of County Comm'rs.*, 81 P.3d 360, 364 (Colo.2003) (describing the General Assembly's preference for broad disclosure of public records favored under CORA). Thus, the CCJRA preference for disclosure is tempered by the privacy interests and dangers of adverse consequences involved in the inspection request. *Harris*, 123 P.3d at 1175. Further, the custodian must properly perform his or her balancing role. *Id.*

The General Assembly has underscored its preference for disclosure of criminal justice records subject to the sound discretion of the custodian by providing that a district court, on review of the custodian's determination, "shall order the custodian to permit such inspection" unless the court "finds that the denial of the inspection was *proper.*" § 24–

72–305(7), C.R.S. (2008) (emphasis added). While this provision might suggest that the district court has the authority to redo the custodian's balancing of the interests, the General Assembly utilized the word "proper" to underscore that the district court's role primarily consists of holding the custodian accountable for performing his or her role.

Applying an abuse of discretion standard to the custodian's criminal justice records request determination accords the proper deference to the custodian, while maintaining the reviewing court's authority to order inspection if the custodian does not properly discharge his or her duty. This standard of review preserves the separation of powers between the judicial and executive branches. Under a de novo review standard, the court would replace the custodian's role of gatekeeper in regard to the agency's criminal justice records. The General Assembly does not intend for the courts to do this in place of the custodian.

■ Looking by analogy to how appellate courts apply an abuse of discretion standard to review a trial court, we observe that abuse of discretion occurs when the trial court's decision is manifestly arbitrary, unreasonable, or unfair. *Hock v. New York Life Ins. Co.*, 876 P.2d 1242, 1251 (Colo.1994); *see E–470 Public Highway Auth. v. Revenig*, 140 P.3d 227, 230–31 (Colo.App.2006) (noting that "[i]n assessing whether a trial court's decision is manifestly unreasonable, arbitrary, or unfair, we ask not whether we would have reached a different result but, rather, whether the trial court's decision fell within a range of reasonable options"). A misapplication of the law would also constitute an abuse of discretion. *Clark v. Farmers Ins. Exch.*, 117 P.3d 26, 29 (Colo.App. 2004) (citing *Kuhn v. State Dep't of Revenue*, 817 P.2d 101 (Colo.1991)).

■ Our cases applying the C.R.C.P. 106(a)(4) standard are also instructive in their application of the abuse of discretion standard applicable when a court reviews agency action. In ascertaining whether an abuse of discretion has occurred, a reviewing court looks to see if the agency has misconstrued or misapplied applicable law, *DeLong*

*v. Trujillo,* 25 P.3d 1194, 1197 (Colo.2001), or whether the decision under review is not reasonably supported by competent evidence in the record. *Van Sickle v. Boyes,* 797 P.2d 1267, 1272 (Colo.1990). Lack of competent evidence occurs when the administrative decision is so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority. *Ross v. Fire & Police Pension Ass'n,* 713 P.2d 1304, 1308–09 (Colo.1986).

■■■■■ The reviewing court should not substitute its judgment for that of the agency's when the General Assembly by statute has consigned the matter to the exercise of the agency's sound discretion. *E.g., News & Film Serv., Inc. v. Pub. Utils. Comm'n of State of Colo.,* 787 P.2d 169 (Colo.1990). On appeal from a custodian's decision, the district court should not redo the custodian's balancing of the interests. *Cf. In re Haines,* 177 P.3d 1239, 1248 (Colo.2008) (noting that the hearing board in an attorney regulation proceeding "weighs the evidence; we do not do so").

■■■■■ Accordingly, under an abuse of discretion standard for reviewing the CCJRA custodian's determination, the district court does three things. First, the court reviews the criminal justice record at issue. Second, the court takes into account the custodian's balancing of the interests and articulation of

his or her determination. Lastly, the court decides whether the custodian has properly determined to: (1) allow inspection of the entire record, (2) allow inspection of a redacted version of the record,[3] or (3) prohibit inspection of the record. If the custodian has failed to engage in the required balancing of the interests or has not articulated his or her rationale, then the trial court should remand the case to the custodian to do so in order to enable judicial review.

## C. Application to this Case

### 1. Classifying Criminal Justice Records

■■■■■ Here, the criminal justice record under review by the district court constituted a completed and closed file of a deputy sheriff who was discharged following the investigation. The records at issue are not records of "official action" under the CCJRA. Instead, the Sheriff must exercise his sound discretion in regard to the inspection request. Investigations by the El Paso County Internal Affairs Unit are authorized by the Sheriff's Policy and Procedure Manual.[4] As part of the Sheriff's department, a criminal justice agency, the records of the Internal Affairs Unit are used "in the exercise of functions ... authorized by law," thus making these records "criminal justice records" pursuant to section 24–72–302(7), C.R.S. (2008).

---

**3.** Redaction, as an alternative, may often be a proper choice to carry out the General Assembly's intent because the CCJRA favors disclosure tempered by protection of privacy interests and dangers of adverse consequences at stake in the record's release. By providing the custodian of records with the power to redact names, addresses, social security numbers, and other personal information, disclosure of which may be outweighed by the need for privacy, the legislature has given the custodian an effective tool to provide the public with as much information as possible, while still protecting privacy interests when deemed necessary. *Office of State Court Adm'r v. Background Info. Servs., Inc.,* 994 P.2d 420, 427 n. 6 (Colo.1999); *see* § 24–72–304(4)(a), C.R.S. (2008); *People v. Thompson,* 181 P.3d 1143–45 (Colo.2008), *reh'g denied* (Apr. 28, 2008) (holding that the CCJRA requires that a grand jury indictment be "released for public inspection in its entirety, subject only to the deletion of identifying information of any alleged sexual assault victims"). Redaction may also protect identities of informants or undercover police offi-

cers. A custodian should redact sparingly to promote the CCJRA's preference for public disclosure.

When the record is not relevant to performance of the criminal justice agency's public function, or when premature release of the information would hinder or jeopardize an ongoing investigation, the custodian may properly refuse to release the record. *Harris,* 123 P.3d at 1175.

**4.** The El Paso County Sheriff's Department's Internal Affairs Unit is "responsible for conducting internal affairs investigations" and is part of the Internal Affairs Section which reports directly to the Chief of the Support Services Bureau, "a non-law enforcement bureau" within the El Paso County Sheriff's Department. EL PASO COUNTY SHERIFF'S DEPARTMENT, EL PASO COUNTY SHERIFF'S OFFICE POLICE AND PROCEDURE MANUAL—ORGANIZATION (10/17/07), *available at* http://shr.elpasoco.com/NR/rdonlyres/ 0C4771C5–49BF–41D2–B8B6–B879B63EE59B/0/101POLICY101707.pdf (last visited on Oct. 16, 2008).

In *Johnson v. Colorado Department of Corrections*, 972 P.2d 692, 694–95 (Colo.App. 1998), the court of appeals concluded that internal affairs investigation files are criminal justice records under section 24–72–302(4), C.R.S. (2008), the inspection of which is subject to the agency's sound discretion under sections 24–72–304 and –305, C.R.S. (2008). *See Harris*, 123 P.3d at 1166.

Judge Miller correctly observed that section 24–72–302, C.R.S. (2008), of the CCJRA limits "official action[s]" to documents directly relating to and incidental to the arrest, prosecution and sentence of individuals who are defendants in the criminal justice system. The purpose of a criminal justice agency's internal affairs investigation, resulting in a document that is not the record of "official action," is to assess the performance of law enforcement officers in carrying out their duties, a matter of the public interest.

## 2. Jurisdiction

■ We reject the John Does' contention that Judge Crowder's sealing of their criminal actions deprived Judge Miller of jurisdiction over The Gazette's petition challenging the Sheriff's decision not to allow inspection of the file. When the custodian denies an applicant's inspection request the district court has authority to issue an order to show cause, hold a hearing, and review the custodian's decision pursuant to section 24–72–305(7), C.R.S. (2008). This section provided Judge Miller with subject matter jurisdiction over this case pursuant to the CCJRA.[5] For the district court to effectively conduct judicial review of the custodian's determination, the custodian must balance the interests involved and provide an adequate rationale for his or her determination.

5. Article VI, section 9 of the Colorado Constitution provides that: "The district courts shall be trial courts of record with general jurisdiction ... and shall have such appellate jurisdiction as may be prescribed by law." "Subject matter jurisdiction concerns the court's authority to deal with the class of cases in which it renders judgment." *In re Marriage of Stroud*, 631 P.2d 168, 170 (Colo.1981).

The CCJRA confers on the district court the jurisdiction to hear appeals from the custodian's decision to deny access to records pursuant to

## 3. District Court's Role

In rejecting the John Does' jurisdictional challenge to Judge Miller's order for inspection of the file, we nevertheless agree that the district court's judgment in this case releasing the entire file, save a few redactions, cannot stand. We conclude that both the Sheriff and the district court failed to comply with either the CCJRA or our decision in *Harris*. 123 P.3d 1166.

Instead of applying an abuse of discretion standard to the Sheriff's determination, the district court erred as a matter of law in applying the wrong legal standard when it independently engaged in balancing the public and private interests involved in The Gazette's inspection request. Utilizing the *Martinelli* factors, the district court reached its decision as though it were conducting de novo review. The district court's order even directed the disclosure of the names of the John Does who were falsely arrested. In doing so, the district court overrode the John Does' interest in protecting their identities from recognition as persons who had been falsely arrested by the police. Thus, the district court negated a basic protection the General Assembly designed for the falsely accused.

The district court failed to identify and apply the proper legal standard upon which its review of the Sheriff's decision must proceed. Proper application of an abuse of discretion standard primarily entails the court holding the custodian to its balancing role, which includes adequately explaining the reasons for the custodian's inspection determination. Instead of holding the Sheriff responsible for failing to properly perform his custodial role, the district court usurped the Sheriff's role by applying the inapplicable *Martinelli* analysis.

section 24–72–305(7), C.R.S. (2008), which states:

Any person denied access to inspect any criminal justice record covered by this part 3 may apply to the district court of the district wherein the record is found for an order directing the custodian of such record to show cause why said custodian should not permit the inspection of such record. A hearing on such application shall be held at the earliest practical time.

*Martinelli* concerned a discovery dispute in a lawsuit for monetary recovery against the City and County of Denver. 199 Colo. 163, 612 P.2d 1083. Police officers who gave statements in an internal affairs investigation asserted a confidentiality interest in their personnel files and the police department's internal affairs files. *Id.* In that context, we directed the district court, *in camera,* to analyze confidentiality claims. *See Id.* at 173–75, 612 P.2d at 1091–92.

■ Here, the matter before the district court was not a discovery dispute arising during litigation. Instead, it arose from the custodian's denial of a CCJRA inspection request. Initially, The Gazette sought the file while the investigation was still ongoing. The Sheriff could properly deny inspection at this stage to prevent hampering the investigation. The Gazette renewed its request after the investigation was complete and the Sheriff had discharged the officer for malfeasance in office, a matter of public interest.

In *Johnson,* the custodian denied plaintiff's request for interim investigatory reports pertaining to the plaintiff. 972 P.2d at 693. The trial court affirmed this decision concluding that ongoing internal affairs investigations could be " 'substantially hampered' by the disclosure of such interim materials." *Johnson,* 972 P.2d at 695. Here, in contrast, the internal affairs file pertaining to Moncalieri was completed and closed, so there was no risk of intimidating or harassing witnesses or otherwise hampering an ongoing investigation.

### 4. Custodian's Role

Section 24–72–305(5), C.R.S. (2008), specifically authorizes the custodian to deny access to investigative records of the Sheriff on the ground that disclosure would be "contrary to the public interest. . . ." *See Johnson,* 972 P.2d at 695. Upon request to the custodian by the person denied their inspection request, the statute requires "a written statement of the grounds for the denial," which "shall cite the law or regulation under which the access is denied or the general nature of the public interest to be protected by the denial . . . ." § 24–72–305(6), C.R.S. (2008).

In his response to the district court's show cause order, the Sheriff incorrectly assumed that the district court's role was to balance the interests utilizing the *Martinelli* analysis. Neither in his response to The Gazette's request for a written statement of the grounds for denial of inspection, nor in his response to the court's show cause order, did the Sheriff: (1) articulate and consider the public's interest in the investigation and discharge of a police officer who abused his public responsibilities and who cost the county $40,000.00 in settlement payments; (2) weigh the private interest or danger of adverse consequences to the John Does; or (3) consider release of a redacted file that would satisfy the CCJRA objectives of disclosure while also addressing privacy concerns involved in the inspection request.

Indeed, the John Does point out that their primary interest is in protecting their names and other personal information connected with an arrest by the Sheriff's office that was subsequently determined to be wrongful. In their petition for relief to us, the John Does state that "the least intrusive manner of releasing this information might have been to redact all identifying information completely [of John Does], including the names of the innocent brothers." [6] In his response to the

---

**6.** In *Harris,* we provided examples of what information is privileged from disclosure:

> Subsections 24–72–305(1)(a) and (b) prevent disclosure of the record if inspection is contrary to any state statute or is prohibited by rules of this court or by the order of any court. The rape shield statute is an example of a statute prohibiting disclosure during certain phases of the investigation and criminal justice proceedings, or at all. *See People v. Bryant,* 94 P.3d 624, 630–31 (Colo.2004). An order suppressing documentary evidence of criminal activity, prohibiting its use, and requiring its

return to the person from whom it was seized, because of an unconstitutional search and seizure, is an example of a court order that would not permit inspection of the record. *See People v. Mason,* 989 P.2d 757, 759 (Colo.1999) (concerning reasonable expectation of privacy in personal banking records). In addition, the legislature has regulated the release of information related to sexual assault cases, § 24–72–304(4), C.R.S. (2005), criminal history records of volunteers and employees of charitable organizations, *id.* § 24–72–305.3, criminal history records of applicants in regulated profes-

district court's show cause order, the Sheriff acknowledges John Does' privacy interest in not having their names disclosed. He suggests to the court that appropriate redaction would protect the John Does' privacy interest. The Sheriff, however, incorrectly took the position that this was within the court's authority, not his: "If the Court orders any materials to be disclosed, care must be taken to remove all identifying references to the two suspects...."

In a case such as this, the custodian's redaction of the names of those falsely arrested is particularly important. The record of an internal affairs investigation of a police officer is likely to include the names and other identifying information unavailable to the public because it is contained in sealed records of "official action." The General Assembly did not intend that the names of falsely arrested persons be revealed by the police when shielded by the court in another context. In *Harris*, we observed that privacy interests in non-disclosure of the criminal justice record are particularly strong when private property has been seized illegally. 123 P.3d at 1173. Here, the criminal justice record resulted from the illegal seizure of the John Does. Their identities, contained in the record, are the most precious of their private property.

### 5. Preserving Judicial Review

■ The district court in this case had authority to review the Sheriff's records request determination under an abuse of dis-

cretion standard. Judicial review of agency action typically requires court examination of the basis for the agency's final determination to assure that the action was justified under applicable legal standards. *Forbes v. Poudre Sch. Dist. R–1*, 791 P.2d 675, 680 (Colo.1990); *see also Bd. of County Comm'rs of County of Adams v. Isaac*, 18 F.3d 1492, 1497 (10th Cir.1994) (noting that "an agency must articulate the grounds for its decision with enough detail to enable the reviewing court to determine whether the agency considered the relevant factors and made a reasonable choice").

Here, the Sheriff failed to balance the public and private interests involved in the inspection request, either in his written response to The Gazette or in his response to the district court's show cause order. In *Harris*, we described the balancing of public and private interests to include the consideration of any factors pertinent to the particular request. 123 P.3d at 1174. Specifically, a custodian should consider the privacy interests of individuals who may be impacted by a decision to allow inspection; the agency's interest in keeping confidential information confidential; the agency's interest in pursuing ongoing investigations without compromising them; the public interest to be served in allowing inspection; and any other pertinent consideration. *Id.*

The Sheriff's lack of analysis in this case stands in contrast to the Jefferson County Sheriff's inspection decision that followed *Harris.*[7] The Jefferson County Sheriff, after

sions or occupations, *id.* § 24–72–305.4, and the results of chemical biological substance testing to determine the genetic markers, *id.* § 24–72–305(1.5). Also, the General Assembly has provided a means in the CCJRA to seal records. *Id.* § 24–72–308.
123 P.3d at 1174.

7. *See Notice of Sheriff's Decision Regarding Request for Release of Certain Criminal Justice Records, Fleming v. Stone*, No. 00–CV–884 (June 19, 2006). In his filing with the district court, the Jefferson County Sheriff lays out his in-depth balancing process that led to his decision to release the redacted written records of Eric Harris and Dylan Klebold, but not the video and audiotapes (referred to collectively as "the tapes") made by the two Columbine High School killers. Sheriff Mink, as official custodian of the records, chose not to release the tapes because

he feared copycat crimes would intensify with the release of propaganda such as the tapes. The Sheriff notes how the tapes "provide a virtual 'how-to' step-by-step guide on the means and methods necessary for implementing similar crimes." *Id.* at 7. The Sheriff's fear was in part justified by at least one other attempted school shooting modeled after the Columbine tragedy and additional consultation with the FBI's Behavorial Analysis Unit that echoed these concerns. Further, the Sheriff described the tapes as "a manifesto" seeking to "reach out to other adolescents by having a dialogue ... with the individuals watching the [t]apes." *Id.* Klebold's and Harris' "dying wish was that these [t]apes would be distributed and spread across the Internet." *Id.* The Sheriff decided he was "unwilling to be an accomplice in Harris' and Klebold's final act by releasing these recordings."

thoroughly articulating his reasons including preventing copycat murders, decided against releasing the videotape.

The Jefferson County Sheriff distinguished the videos from the writings, for which he allowed inspection based on the rationale that they did not pose the same risk because "video and audio images provide a more powerful medium for communicating with troubled adolescents than the written word." *Notice of Sheriff's Decision Regarding Request for Release of Certain Criminal Justice Records* at 10, *Fleming v. Stone,* No. 00–CV–884 (June 19, 2006). In addition to the differences between the mediums of communication, the writings are "of a different nature ... The [t]apes were directed towards a specific audience and were prepared with that in mind" while "[t]he [w]ritings consist of personal journal entries written to themselves, which lack the dialogue component of the [t]apes." *Id.* at 10. The Jefferson County Sheriff released the writings in redacted form.

 We do not suggest that the rationale for every CCJRA custodian inspection decision must exhibit a commensurate focus or as detailed an analysis as the Jefferson County Sheriff's in the Columbine case. Nevertheless, at a minimum, to enable judicial review as contemplated by section 24–72–305(7), C.R.S. (2008), the record of the custodian's inspection request determination before the district court should include an articulation of the custodian's balancing of the public and private interests in the record. *Cf. People v. D.F.,* 933 P.2d 9, 14 (Colo.1997) ("[A]s part of our review we ascertain 'whether the trial

court's findings of fact and conclusions of law are adequate for purposes of appellate review....' [W]hether the court's 'findings of historical fact are adequately supported by competent evidence and whether the court applied the correct legal standard to these findings.'" And, "[w]e read the record and determine whether the evidence before the lower court 'adequately supported the district court's ultimate legal conclusion'" (internal citations omitted)); *accord People v. Gothard,* 185 P.3d 180, 183 (Colo.2008).

The General Assembly's ultimate purpose in providing for judicial review of discretionary inspection determinations and authorizing the courts in appropriate circumstances to order the release or redacted release of the record, section 24–72–305(7), C.R.S. (2008), is to prevent the custodian from utilizing surreptitious reasons for denying inspection of law enforcement records or reasons which, though explained, do not withstand examination under an abuse of discretion standard.

### III.

Accordingly, we make our rule absolute and remand this case to the district court to return this case to the Sheriff for a proper CCJRA inspection request determination consistent with this opinion.

---

The Jefferson County Sheriff's department has released over 12,000 pages of documents along with video and audio tapes relating to the inci-

dent. For a disclosure list see http://www.co.jefferson.co.us/sheriff/sheriff_T62_R27.htm.