Frank ROMERO, Plaintiff–Appellant,

v.

CITY OF FOUNTAIN, Colorado, and Fountain Police Department, Defendants–Appellees.

No. 11CA0690.

Colorado Court of Appeals, Div. A.

May 12, 2011.

Radabaugh, Barker & Callison, Ltd., Richard Callison, Mark A. Barker, David G. Berry, Colorado Springs, Colorado, for Plaintiff–Appellant.

Vaughan & Demuro, Sara L. Cook, Colorado Springs, Colorado, for Defendants–Appellees.

Opinion by Judge RICHMAN.

Plaintiff, Frank Romero, a former police officer with the City of Fountain, filed a complaint in the El Paso County District Court seeking a temporary restraining order and a preliminary injunction to preclude defendants, City of Fountain and the Fountain Police Department, from releasing an internal investigation report and two summaries of it that defendants had prepared concerning Romero's actions while employed as a police officer. The report had been requested by a local television station under the Colorado Open Records Act, sections 24–72–201 to –206, C.R.S.2010 (CORA). According to the complaint, the investigation involved allegations of inappropriate contact, between Romero, while in uniform, and two different women. By letter dated March 11, 2011, defendants notified Romero that they intended to release two summaries of the investigation report to the television station on March 18, 2011.

On March 17, 2011, Romero filed his complaint, seeking to preclude disclosure of the summaries and the report under the Colorado Criminal Justice Records Act, sections 24–72–301 to –309, C.R.S.2010 (CCJRA), and under CORA, alleging that they contained personal information that would irreparably injure him if released. He also alleged that the release of the summaries or the report would result in "immediate and unwarranted consequences" under section 24–72–308(1)(c), C.R.S.2010 ("dangers of unwarranted adverse consequences" may warrant sealing criminal records). On March 18, 2011, the district court entered a temporary restraining order precluding the release of the report and summaries, and set a hearing for March 23, 2011.

On that date, the district court consolidated with this case a separate case in which Romero sought permanent injunctive relief, and held a closed hearing on Romero's request for preliminary injunctive relief. The court closed the hearing to the public and the press because the testimony and arguments at the hearing would likely have revealed some of the contents of the report, the disclosure of which Romero was seeking to prevent.

At the conclusion of the hearing, the court denied the preliminary injunction request after applying the factors set forth in *Rathke v. MacFarlane*, 648 P.2d 648, 653–54 (Colo. 1982) ("In exercising its discretion, the [district] court must find that the moving party has demonstrated: (1) a reasonable probability of success on the merits; (2) a danger of real, immediate, and irreparable injury which may be prevented by injunctive relief; (3) that there is no plain, speedy, and adequate remedy at law; (4) that the granting of a preliminary injunction will not disserve the public interest; (5) that the balance of equities favors the injunction; and (6) that the injunction will preserve the status quo pending a trial on the merits." (citations omitted)).

The district court gave detailed reasons on the record for its ruling, but stayed its order for fourteen days (through April 6, 2011) to allow Romero to file an appeal with this court. The district court also issued a brief written order reiterating its denial of the preliminary injunction request. The written order did not set forth detailed reasons for the denial of the injunction, in part because doing so would have revealed some of the information contained in the report. The written order clarified that the court had analyzed the issue under CCJRA and was denying the requested relief under the standards of *In re Freedom Colorado Information, Inc. v. El Paso County Sheriff's Department*, 196 P.3d 892 (Colo.2008).

On April 1, 2011, Romero filed a notice of appeal with this court, together with a motion pursuant to C.A.R. 8(a), requesting a stay of the district court's order denying his request for injunctive relief until such time as his appeal of that order could be heard by this court. On April 6, 2011, the Chief Judge granted a temporary stay through April 15, 2011. Because the written order attached to the notice of appeal did not set forth all the reasons for the district court's decision, the temporary stay order directed Romero to obtain and file with this court, under seal, a transcript of the March 23, 2011 hearing. On receipt of the transcript, this court's motions division granted continuances of the stay through May 20, 2011, to give the divi-

sion adequate time to rule on the motion for a stay pending appeal.

The motions division has now determined that the request for a stay pending appeal should be denied, for the following reasons.

## I. Standards for Granting Stay

C.A.R. 8(a) provides in pertinent part:

Application for a stay of the judgment or order of a trial court pending appeal, ... or for an order suspending, modifying, restoring, or granting an injunction during the pendency of an appeal must ordinarily be made in the first instance in the trial court. A motion for such relief may be made to the appellate court or to a judge or justice thereof, but the motion shall show that application to the trial court for the relief sought is not practicable, or that the trial court has denied an application, or has failed to afford the relief which the applicant requested, with the reasons given by the trial court for its action.... The motion shall also show the reasons for the relief requested and the facts relied upon, and if the facts are subject to dispute the motion shall be supported by affidavits or other sworn statements or copies thereof. With the motion shall be filed such parts of the record as are relevant. Reasonable notice of the motion shall be given to all parties.

Romero's motion does not recite any authority expressly setting forth the standards employed to determine whether such a stay should be issued from an order denying a preliminary injunction. Our research also does not reveal any published Colorado appellate decision setting forth such standards.

■ However, the federal courts recognize that under the "traditional standard" for a stay a court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder,* 556 U.S. 418, 129 S.Ct. 1749, 1756, 173 L.Ed.2d 550 (2009) (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)) (applying "traditional standard" for stay pending appeal of immigration removal order); *see also Hilton,* 481 U.S. at 776, 107 S.Ct. 2113 (listing same factors for deciding whether to stay an order releasing a prisoner). Under federal law, in determining whether to grant a stay of a district court order granting or denying an injunction, the appellate court considers the same factors. *See, e.g., Homans v. City of Albuquerque,* 264 F.3d 1240, 1243 (10th Cir.2001).

We conclude that the federal standards for analyzing whether or not to grant a stay are well reasoned and should be applied by this court when considering whether to stay an order denying or granting an injunction.

■ A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issuance depends upon the circumstances of the particular case. The traditional stay factors contemplate individualized judgments in each case. The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion. *Nken,* 556 U.S. at 432–35, 129 S.Ct. at 1760–61. Applying this test is possible here because we have before us a well-developed record, without which an appellant would rarely be able to meet this burden.

With respect to the four stay factors, some courts have held that where the moving party has established that the three "harm" factors tip decidedly in its favor, the "probability of success" requirement is somewhat relaxed. *See, e.g., FTC v. Mainstream Marketing Services, Inc.,* 345 F.3d 850, 852 (10th Cir.2003). Under those circumstances, probability of success is demonstrated when the appellant seeking the stay has raised "questions going to the merits so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Id.* at 853 (quoting *Prairie Band of Potawatomi Indians v. Pierce,* 253 F.3d 1234, 1246–47 (10th Cir.2001)).

Other courts phrase the test differently. In *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153–54 (6th Cir.1991), the Sixth Circuit held that "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[ ] will suffer absent the stay. Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere 'possibility' of success on the merits." *See also Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir.2002) (quoting same test).

In *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir.1981), the Fifth Circuit concluded "on motions for stay pending appeal the movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay."; *see also Arnold v. Garlock, Inc.*, 278 F.3d 426, 438–39 (5th Cir.2001).

The Fifth Circuit test relied on the formulation set forth in *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977) ("The court is not required to find that ultimate success by the movant is a mathematical probability, and indeed, as in this case, may grant a stay even though its own approach may be contrary to movant's view of the merits. The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other factors.").

We conclude that the formulation set forth by the Sixth Circuit in *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog* to be the most appropriate as it allows the court to adapt its analysis of a request for stay and determine the propriety of its issuance depending upon the circumstances of the particular case, as the Supreme Court suggests in *Nken*.

A moving party seeking a stay, like a party seeking a preliminary injunction, satisfies the irreparable harm requirement by demonstrating a danger of real, immediate, and irreparable injury that may be prevented by the requested relief. *Rathke*, 648 P.2d at 653; *see also Peak Medical Oklahoma No. 5, Inc. v. Sebelius*, No. 10–CV–597–TCK–PJC, 2010 WL 4809319, at *3 (N.D.Okla. Nov. 18, 2010) (unpublished opinion and order) (irreparable harm in context of a request for a stay shown by "a significant risk that [the moving party] will experience harm that cannot be compensated after the fact by monetary damages" (quoting *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir.2009))).

After determining the harm that would be suffered by the moving party if the stay is not granted, the court must then weigh that harm against the harm to the other party if the stay or injunction pending appeal is granted. *Peak Medical*, 2010 WL 4809319, at *4.

Finally, as to the public interest factor, the court considers whether there are policy considerations that bear on whether a stay or injunction should issue. *Id.*

## II. Analysis

We agree that Romero has shown a risk that he will be harmed if we decline to grant a stay because the summaries will be released and their release will deprive Romero of meaningful injunctive relief.

We also must consider whether the release of the summaries themselves presents a threat of irreparable harm. The district court found it "axiomatic" that Romero satisfied the irreparable harm prong of the *Rathke* test because the summaries of the internal investigation report contain material which may be injurious to Romero's reputation, and the release of an "unflattering portrait of an individual" arising from allegations of misuse of his position and authority for personal gain or improper personal purposes certainly could cause irreparable damage. If a stay is denied, the summaries of the internal report will be released, and even if Romero were ultimately to prevail in this appeal, it may be a meaningless victory.

However, we note that Romero's complaint itself reveals some of the material contained in the internal investigation report, including that the investigation involved allegations of

inappropriate activity by Romero while in uniform relating to Romero and two women; that as a result of the investigation the police department recommended that Romero be terminated; that instead, Romero resigned; and that he is now working for the Green Mountain Falls police force. Accordingly, while we agree that Romero has made a showing of potential irreparable harm if disclosure of the report is not stayed, we do not conclude that this factor is so determinative as to lower the required degree of probability of success.

To succeed on the merits of his appeal, Romero must demonstrate that the district court abused its discretion in denying a preliminary injunction. *Rathke*, 648 P.2d at 653. Under that standard, we review de novo the court's ruling to determine whether it is based on an erroneous application of the law, or is otherwise manifestly arbitrary, unreasonable, or unfair. *Bloom v. National Collegiate Athletic Ass'n*, 93 P.3d 621, 623 (Colo. App.2004).

Here, the district court concluded that Romero could not show, as required by *Rathke*, a likelihood that he would prevail on the merits of his claim under CCJRA. We perceive no error or abuse of discretion in that determination.

We note that the district court properly analyzed this case under CCJRA. Although the original request from the television station was apparently submitted under CORA, the court conducted its analysis under the case law decided under CCJRA, primarily *Freedom Colorado Information* and *Harris v. Denver Post Corp.*, 123 P.3d 1166 (Colo. 2005). The fact that the court analyzed the case under CCJRA is significant for several reasons.

First, the district court here correctly recognized that internal affairs investigation files are treated as criminal justice records under section 24–72–304(4), C.R.S.2010. *Freedom Colorado Information*, 196 P.3d at 901 (citing *Johnson v. Colorado Dep't of Corrections*, 972 P.2d 692 (Colo.App.1998)). As the files are criminal justice records, divulging their contents is subject to the agency's sound discretion under sections 24–72–304

and –305, C.R.S.2010. *Id.; see also Harris*, 123 P.3d at 1168.

Second, although CCJRA expressly provides only for weighing whether the disclosure would be contrary to the public interest, *see* § 24–72–305(1) & (5), C.R.S.2010, the district court noted that Romero's privacy interest in the nondisclosure of such records must also be considered. Thus, the district court acknowledged the legislative policy that access to criminal justice records under CCJRA is more restrictive than is the policy regarding access to public records under CORA, and recognized that CCJRA preference for disclosure is tempered by the privacy interests and dangers of adverse consequences involved in the inspection request. *See Freedom Colorado Information*, 196 P.3d at 899.

Third, the district court also recognized that under CCJRA the custodian must properly perform his or her balancing role. *Id.* That role, as described in *Harris*, requires the custodian to consider

> the pertinent factors, which include the privacy interests of individuals who may be impacted by a decision to allow inspection; the agency's interest in keeping confidential information confidential; the agency's interest in pursuing ongoing investigations without compromising them; the public purpose to be served in allowing inspection; and any other pertinent consideration relevant to the circumstances of the particular request.

*Harris*, 123 P.3d at 1175.

Here, at the preliminary injunction hearing, Romero argued that defendants did not conduct a proper balancing of the competing private and public interests, because no reasons explaining the decision to release the summaries of the report were set forth in the March 11 letter. In *Freedom Colorado Information*, the supreme court noted that the sheriff had failed to show the balancing of interests either in his response to the newspaper or in his response to the court's show cause order. 196 P.3d at 903. Here, however, based on the police chief's testimony at the preliminary injunction hearing, the district court concluded that the chief had prop-

erly exercised his balancing role. The record supports that conclusion.

The testimony at the hearing reveals that the police chief took into account Romero's privacy interest, as well as the public interest in disclosure of the summaries of the internal report, and exercised his discretion. The police chief identified and "articulated" both Romero's privacy interest and the public interest in knowing the contents of the report as factors that he considered in making his determination to release the summaries of the report. *See Freedom Colorado Information,* 196 P.3d at 904 ("the record of the custodian's inspection request determination before the district court should include an articulation of the custodian's balancing of the public and private interests in the record").

The record does not indicate that the chief was motivated to release the report or summaries because of any animosity against Romero, or for any other "surreptitious reasons" that would be improper. *Id.*

While this court, or the district court, may have balanced the respective interests differently on these facts, it is not the role of any court to do so. As the opinion in *Freedom Colorado Information* makes clear, a district court applies the wrong legal standard under CCJRA "when it independently engage[s] in balancing the public and private interests involved in [an] inspection request." *Id.* at 901. Therefore, we cannot conclude that on appeal, Romero is likely to succeed in showing that the district court abused its discretion in denying a preliminary injunction.

We recognize, as Romero urges, that there is little or no harm to the opposing party if the stay is entered. Here, neither the City of Fountain nor the Fountain Police Department is directly affected by the release of the report. Defendants have discharged their obligation to the entity requesting the records under CCJRA and are not exposed to any risk if a stay is entered. We recognize that the television station sought release of the report, but the station is not a party to the case.

However, we further conclude that the circumstances of this case present a risk of harm to the public interest if the disclosure of the summaries of the report is stayed pending appeal. As Romero has alleged in his publicly filed complaint, he was investigated based on allegations of inappropriate conduct, while in uniform, resulting in his resignation. The district court found that where an officer was found "rightly or wrongly, to have committed, at the very least, a rule violation which is potentially a serious misuse of the office," the investigation reflects a potentially serious abuse of police officer power and responsibilities. It concluded that this is the kind of information the public would have the right to know, given that the investigation was concluded and resulted in Romero's resignation from the police force.

We agree that a lengthy delay of the disclosure of such information while this case makes its way through the appellate process may disserve the public interest. *See id.* at 902 (suggesting that the public has an interest in the "investigation and discharge of a police officer who abused his public responsibilities").

Because Romero is not likely to succeed on appeal and consideration of the public interest disfavors a stay, we deny the motion for stay pending appeal.

However, because the release of the summaries of the report is likely to terminate Romero's right to injunctive relief as a practical matter, we extend the stay of this court through May 20, 2011, in order to allow Romero to seek relief from the Colorado Supreme Court with respect to this order.

Judge CASEBOLT and Judge HAWTHORNE concur.