Margarita MADRIGAL, individually and as next friend to, M.M., R.M.M., and J.M., minor children, Plaintiffs-Appellants,

v.

CITY OF AURORA; and Juan Guzman, in his official capacity as Records Clerk for the City of Aurora, Defendants-Appellees.

Court of Appeals No. 12CA2551

Colorado Court of Appeals,
Div. VII.

Announced May 22, 2014

Kenneth A. Padilla, Denver, Colorado, for Plaintiffs-Appellants

Brownstein Hyatt Farber Schreck, LLP, Martha L. Fitzgerald, Carrie E. Johnson, Denver, Colorado, for Defendants-Appellees

Opinion by JUDGE NAVARRO

¶ 1 Pursuant to the Colorado Criminal Justice Records Act (CCJRA), sections 24–72–301 to –309, C.R.S.2013, plaintiffs, Margarita Madrigal and her children, requested records from defendants, the City of Aurora and its records administrator, Juan Guzman (collectively, the City). The City initially denied inspection of the records and failed to respond to plaintiffs' subsequent request for a written statement of the grounds for the denial. On plaintiffs' application, the district court issued an order directing the City to show cause why it should not permit inspection. The City ultimately disclosed almost all of the records requested. The court determined that the City did not abuse its discretion either in delaying release of the records disclosed or in denying release of the records not disclosed. The court also concluded that plaintiffs were not entitled to attorney fees, court costs, or penalties, despite the City's erroneous failure to respond to plaintiffs' request for a statement of the grounds for the initial denial of inspection. Plaintiffs appeal the district court's order. We affirm.

## I. Background

¶ 2 In July 2011, an Aurora Police Department (APD) officer shot and killed plaintiffs' husband and father, Juan Contreras, in a parking lot. Plaintiffs requested from the City various records pertaining to this incident, including police reports, internal investigation reports, written and videotaped statements of witnesses, photographs and video recordings capturing the incident, and the identification of all people parked in the lot where Mr. Contreras was killed. The City denied this request on the ground that disclosure would be contrary to the public interest. Plaintiffs, in September 2011, requested a written statement explaining why the City had reached that conclusion. Due to an oversight, the City failed to respond to this request.

¶ 3 Months later, after making no further inquiries into the status of their request, plaintiffs filed a complaint with the district court seeking an order to show cause directed to the City. The court issued the order.

¶ 4 Meanwhile, the District Attorney for the Eighteenth Judicial District (DA) convened a grand jury to investigate the death of Mr. Contreras. While this investigation was pending, the district court held a show cause hearing on plaintiffs' complaint, at which Mr. Guzman and the chief of the APD testified. Less than a week after this hearing (and before the court issued a ruling), the grand jury returned a "no true bill"; that is, the grand jury declined to indict anyone in connection with the death of Mr. Contreras. The DA released the grand jury report to plaintiffs.

¶ 5 After plaintiffs asserted that the grand jury report did not satisfy their records request, the City delivered over 800 pages of documents to plaintiffs. These documents included the entire APD investigative file, including police reports and names of the officers involved, names and contact information of all witnesses, photographs of the scene, videotaped statements of the witnesses, and a "use of force investigative summary." (Approximately ten months elapsed between plaintiffs' initial records request and the delivery of these documents to plaintiffs.) The City also identified four categories of records that it had not released: autopsy reports, medical records from the Aurora Fire Department, APD internal affairs records, and search warrants sealed by court order. Plaintiffs then acknowledged that they had received all requested records, except the four categories described by the City.[1]

¶ 6 The district court discharged the order to show cause. Regarding the records disclosed to plaintiffs, the court found that the City had not abused its discretion in delaying the disclosure until after the conclusion of the criminal investigation because earlier disclosure likely would have hindered the investigation. The court also found that the City had not abused its discretion in denying release of the few categories of undisclosed documents. Finally, the court declined to

---

1. On appeal, plaintiffs and the City note that the APD later released to the public the findings of the APD internal investigation into the death of Mr. Contreras. This report was released after the filing of the notice of appeal and is not part of the record on appeal.

impose sanctions for the City's failure to respond to plaintiffs' September 2011 request for a written statement explaining the initial denial of inspection.

## II. Disclosure Under the CCJRA

¶ 7 We first describe the limited issue before us. Plaintiffs contend that the district court erred in determining that the City did not abuse its discretion in handling their records request. But plaintiffs' arguments on appeal focus exclusively on the records *actually disclosed* to them: plaintiffs assert error in the ten-month delay in the release of these records.

¶ 8 Plaintiffs do not challenge the City's decision to deny inspection of the few categories of records that remain *undisclosed*. Although plaintiffs conclude their appellate briefs by vaguely requesting the release of "all records sought," they fail to identify any records not disclosed but which they still seek. Plaintiffs do not discuss—much less articulate any challenge to—the district court's rationale for upholding the City's decision with respect to the undisclosed records. *Cf. Barnett v. Elite Props. of Am., Inc.,* 252 P.3d 14, 19 (Colo.App.2010) ("We will not consider a bald legal proposition presented without argument or development. Counsel must inform the court both as to the specific errors asserted and the grounds, supporting facts, and authorities to support their contentions.") (citation omitted).[2] Thus, we limit our review to the records actually disclosed to plaintiffs, and we consider whether the ten-month delay in releasing these records reflected an abuse of discretion.

### A. The CCJRA and the Standard of Review

■ ¶ 9 As one of Colorado's open government laws, the CCJRA governs the public's access to criminal justice records. *See Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't,* 196 P.3d 892, 899 (Colo.2008).

Under the CCJRA, criminal justice records include:

> books, papers, cards, photographs, tapes, recordings, or other documentary materials, regardless of form or characteristics, that are made, maintained, or kept by any criminal justice agency in the state for use in the exercise of functions required or authorized by law or administrative rule.

§ 24–72–302(4), C.R.S 2013. The CCJRA further distinguishes between two categories of records: (1) records of "official actions," and (2) all other criminal justice records. §§ 24–72–301(2), –302(7), C.R.S.2013; *see Freedom Colo. Info.,* 196 P.3d at 898. An "official action" includes, for example, an arrest, indictment, disposition, or release from custody. § 24–72–302(7). Generally, records of official actions "shall be open for inspection by any person"; all other criminal justice records "may be open for inspection" at the discretion of the custodian (subject to some exceptions barring disclosure). §§ 24–72–303, –304, –305, C.R.S.2013; *see Freedom Colo. Info.,* 196 P.3d at 898.

¶ 10 A custodian may deny access to a criminal justice record on the ground that disclosure would be contrary to the public interest. § 24–72–305(5). If the custodian does so, the applicant for the record may request a written statement of the ground for the denial. § 24–72–305(6). Any person denied access to a criminal justice record may apply to the district court for an order directing the custodian to show cause why inspection should not be permitted. § 24–72–305(7). "Unless the court finds that the denial of inspection was proper," the court shall order the custodian to permit inspection. *Id.*

¶ 11 In this case, the parties acknowledge, and we agree, that the APD is a criminal justice agency, and the records at issue were made or maintained for use in the exercise of functions required or authorized by law. *See* § 24–72–302(3); *Harris v. Denver Post Corp.,* 123 P.3d 1166, 1172–73 (Colo.2005). The parties also concede, and we concur, that the records requested are criminal justice

---

2. The district court analyzed four separate periods relevant to plaintiffs' records request: (1) "Investigatory Pre–Grand Jury Period"; (2) "Grand Jury Period"; (3) "Post–Grand Jury Period, Disclosed Documents"; and (4) "Post–Grand Jury Period, *Undisclosed Documents*." (Emphasis added.) Plaintiffs concede that "[o]nly the first three periods are pertinent to this appeal."

records but are not records of official actions.[3]

¶ 12 Therefore, the decision whether to grant inspection of the records here was "consigned to the exercise of the custodian's sound discretion under sections 24–72–304 and –305." *Freedom Colo. Info.*, 196 P.3d at 897. The district court was obligated to review the custodian's decision for an abuse of discretion. We review de novo whether the district court applied the correct standard of review, *see id.* and we conclude that the court did so.

¶ 13 To the extent the district court made findings of historical fact based on evidence presented at the show cause hearing (e.g., findings as to the credibility of witnesses or the factual basis for the custodian's determination), we defer to those findings unless they are clearly erroneous. *See City of Fort Morgan v. E. Colo. Publ'g Co.*, 240 P.3d 481, 485 (Colo.App.2010). Because the ultimate decision whether to disclose the records here was consigned to the custodian's discretion (not the district court's), we stand in the same position as the district court in assessing whether the custodian abused his discretion. *Cf. Freedom Colo. Info.*, 196 P.3d at 899 (recognizing that cases applying the C.R.C.P. 106(a)(4) standard to review agency action are instructive in describing judicial review of a custodian's discretionary decision under the CCJRA); *City of Colorado Springs v. Givan*, 897 P.2d 753, 756 (Colo. 1995) ("[A]n appellate court is in the same position as the district court in reviewing an administrative decision under Rule 106."); *Alward v. Golder*, 148 P.3d 424, 428 (Colo. App.2006) ("Because an appellate court sits in the same position as the district court when reviewing an agency's decision under C.R.C.P. 106(a)(4), appellate review of the district court's decision is de novo.").[4]

¶ 14 The custodian's determination constitutes an abuse of discretion when it is manifestly arbitrary, unreasonable, or unfair; it reflects a misapplication of the law; or it is not reasonably supported by competent evidence in the record. *See Freedom Colo. Info.*, 196 P.3d at 899–900.

### B. No Abuse of Discretion Occurred

■ ¶ 15 We now turn to whether the City (or, more precisely, the official custodian of the records) abused its discretion in delaying the release of the records for ten months, pending the completion of the criminal investigation into Mr. Contreras's death. We agree with the district court that it did not.

¶ 16 In making the determination whether to permit inspection of criminal justice records, the custodian must balance (1) the privacy interests of individuals impacted by allowing inspection; (2) the agency's interest in keeping confidential information confidential; (3) the agency's interest in pursuing ongoing investigations without compromising them; (4) the public purpose served by allowing inspection; and (5) any other consideration relevant to the particular inspection request. *Id.* at 899.

¶ 17 As records administrator in the City clerk's office, Mr. Guzman received record requests from the public, forwarded them to the relevant City department, and coordinated responses on behalf of the departments. Mr. Guzman testified that the "department directors have custodial responsibility," and he relied "on their expertise" in determining whether to release records. Thus, the offi-

---

**3.** Arguably, the grand jury report included a record of an "official action" (i.e., a "disposition" in the form of "a decision not to file criminal charges after arrest"). *See* § 24–72–302(6)–(7). But it is not clear whether an arrest occurred in this case. In any event, plaintiffs never requested the grand jury report. And, notwithstanding their failure to request it, they received the report promptly after the grand jury completed its investigation. Thus, plaintiffs do not allege error with respect to the grand jury report.

**4.** In contrast, where a record of an official action is at issue, the "court performs the public and

private interests balancing function in regard to the sealing" of such a record. *Freedom Colo. Info.*, 196 P.3d at 898; *see* § 24–72–308(1)(c), C.R.S.2013; *cf. Harris*, 123 P.3d at 1174 ("As with public records in [the Colorado Open Records Act], the legislature mandated that records of official actions be disclosed if requested."). Because the decision would be consigned to the district court's discretion in that instance, we would review the court's decision for an abuse of discretion. *See People v. Bushu*, 876 P.2d 106, 107 (Colo.App.1994).

cial custodian of the criminal justice records at issue here was the chief of the APD. *See* § 24–72–302(8) ("Official custodian" means the officer or employee "who is responsible for the maintenance, care, and keeping of criminal justice records, regardless of whether such records are in his actual personal custody and control."); *see also Harris,* 123 P.3d at 1173 ("A sheriff's department is the official custodian of criminal justice records." (internal quotation marks omitted)). Indeed, Mr. Guzman explained that he initially denied plaintiffs' request based solely on the APD's determination that disclosure would compromise an ongoing investigation.

¶ 18 Hence, we consider whether the chief of the APD balanced the appropriate factors in deciding to delay inspection of the records pending completion of the investigation. At the hearing, APD Chief Daniel Oates acknowledged that both plaintiffs and the public had an interest in the requested records:

[CITY ATTORNEY]: So as to those documents … as the head of the agency, do you believe that the public has an interest in that type of information?

[CHIEF OATES]: Yes.

[CITY ATTORNEY]: And please describe that.

[CHIEF OATES]: Well, about the most significant event that happens in a police department is when a police department uses deadly force and takes someone's life so it is a—it is a—it is an event of major consequence for the public and for the police department in terms of accounting for the actions of the police department.

[CITY ATTORNEY]: And do you understand that Ms. Madrigal and the family of Juan Contreras specifically have an interest in that type of information that was contained in those files?

[CHIEF OATES]: Oh, absolutely, yes.

¶ 19 Nonetheless, Chief Oates concluded that immediate disclosure of these records was not in the public interest. Chief Oates testified that confidentiality was essential during an ongoing investigation:

[CITY ATTORNEY]: And as a criminal justice agency, is there also a need for investigative secrecy during certain parts of your law enforcement duties?

[CHIEF OATES]: Yes. During the period that the matter is being investigated by the police department and then by the district attorney, I believe it to be essential that the investigation be conducted in confidentiality until there is a finding.

[CITY ATTORNEY]: Why do you believe that's essential?

[CHIEF OATES]: In order to be most effective in getting information from witnesses and gathering evidence, it's essential that the police department and the district attorney be able to do that work without interference from any outside parties that might in fact by their behavior affect the gathering of evidence or the quality of evidence or the gathering of all the facts.

In other words, confidentiality was important while APD was investigating a case because disclosing details could impede APD's ability to gather statements from witnesses and other evidence. When asked to elaborate on how premature disclosure could impede APD's investigations, Chief Oates stated:

I have seen many times in my career where pieces of information regarding an ongoing and sensitive investigation have been—have found their way into the public media or the public discourse and it has impacted the ability of the police department to conduct as thorough and efficient an investigation as it could.

He testified that it would be appropriate to release the records after the police and the DA concluded the investigation into the officer-involved shooting (and any subsequent criminal prosecution).

¶ 20 Chief Oates's testimony reflects that he balanced the relevant public and private interests at stake. His determination that disclosure would compromise an ongoing investigation represents an appropriate and reasonable basis for denying release of the records during the investigation. In enacting the CCJRA, the General Assembly was "aware that privacy interests and the need for investigative secrecy may dictate nondisclosure to the public of criminal justice records at a particular phase of the investiga-

tion or judicial proceeding, or at all." *Harris*, 123 P.3d at 1174; *see Freedom Colo. Info.*, 196 P.3d at 899 (recognizing criminal justice agency's interest "in pursuing ongoing investigations without compromising them"); *Johnson v. Colo. Dep't of Corr.*, 972 P.2d 692, 695 (Colo.App.1998) (denial of inspection was proper where custodian testified that internal affairs investigation could be hampered by disclosure of materials during an ongoing investigation).

¶ 21 Because the General Assembly has consigned this determination to the custodian's sound discretion, we may not reweigh the custodian's balancing of the interests. *Freedom Colo. Info.*, 196 P.3d at 900. Instead, "[p]roper application of an abuse of discretion standard primarily entails the court holding the custodian to its balancing role, which includes adequately explaining the reasons for the custodian's inspection determination." *Id.* at 901. We conclude that Chief Oates adequately explained the rationale for denying release of the records while an investigation was ongoing.

¶ 22 We also reject plaintiffs' contention that the investigation was necessarily completed when the APD delivered its case file to the DA. Chief Oates explained that, in the APD's view, the criminal investigation was not completed until the DA completed her review:

> In an officer-involved' shooting, I don't consider the investigation complete until the district attorney's investigation is complete and they are satisfied. There is always the potential that they'll turn back to us and ask for more investigative work. There's a potential they will assign their own investigators to further investigate the matter, so we as a matter of policy do not act on any administrative issues with regard to the performance of the officers until we have a finding from the district attorney.

Chief Oates testified that the APD did not conduct its internal investigation of an officer-involved shooting until after the DA's investigation was completed:

> Our policy is so as not to interfere with the district attorney's investigation that we don't conduct or complete our internal affairs investigation until the district attorney has finished her case.
>
> . . .
>
> In this case because it was an open case involving [an] officer-involved shooting for which the district attorney would have to weigh in and make a finding on the actions, it was inappropriate to release this case.

The record thus reveals a reasonable and adequate basis for Chief Oates's determination that the investigation was not yet complete when the APD turned over its case file to the DA.

¶ 23 Finally, for two reasons, we are not persuaded by plaintiffs' contention that an abuse of discretion occurred because the APD did not conduct a balancing analysis until the show cause hearing, several months after plaintiffs' request was initially denied. First, as a factual matter, testimony at the hearing showed that Mr. Guzman denied plaintiffs' initial request because the APD determined (at the time of that request) that release of the records would harm the ongoing investigation into Mr. Contreras's death. Chief Oates later elaborated on this rationale at the hearing.

¶ 24 Second, as a legal matter, a custodian's articulation of his or her rationale at the hearing, or even on remand from the court, may be sufficient to demonstrate that the custodian did not abuse his or her discretion. *See id.* at 900 ("If the custodian has failed to engage in the required balancing of the interests or has not articulated his or her rationale, then the trial court should remand the case to the custodian to do so in order to enable judicial review."); *Romero v. City of Fountain*, 307 P.3d 120, 124–25. (Colo.App. 2011) (concluding that district court properly held that CCJRA custodian did not abuse his discretion, based on testimony at preliminary injunction hearing).

¶ 25 Accordingly, we conclude that the custodian did not abuse his discretion in delaying the release of the criminal justice records requested in this case.[5]

**5.** To the extent that plaintiffs attempted at oral argument to raise a constitutional challenge to

### III.   Sanctions under the CCJRA

¶ 26 Plaintiffs assert that the district court misapplied the relevant statute by declining to impose penalties, attorney fees, and court costs as sanctions for the City's delay in disclosing the records and for its failure to respond to plaintiffs' September 2011 request for a statement of the grounds for the initial denial of inspection. We disagree.

### A.   Standard of Review

¶ 27 We review de novo questions of law concerning the application and construction of statutes. *Freedom Colo. Info.*, 196 P.3d at 897. When determining the legislature's intent, we first look to the plain language of the statute. *Bostelman v. People*, 162 P.3d 686, 689 (Colo.2007). We read words and phrases in context and construe them according to their common usage. *Id.* "Where the language is clear and unambiguous, we do not resort to other rules of statutory construction." *Klinger v. Adams Cnty. Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo.2006).

### B.   Temporary Denial of Inspection

¶ 28 Under the CCJRA, a district court has· authority to impose various remedies if it finds that the custodian's denial of inspection was improper:

Unless the court finds that the denial of inspection was proper, it shall order the custodian to permit such inspection and, upon a finding that the denial was arbitrary or capricious, it may order the custodian to pay the applicant's court costs and attorney fees in an amount to be determined by the court. Upon a finding that the denial of inspection of a record of an official action was arbitrary or capricious, the court may also order the custodian personally to pay to the applicant a penalty in an amount not to exceed twenty-five dollars for each day that access was improperly denied.

§ 24–72–305(7).

¶ 29 As discussed, the custodian's temporary denial of inspection was proper in this case. Therefore, the plain language of the statute did not authorize the district court to order the custodian to pay court costs, attorney fees, or penalties. Further, the court could not impose penalties in any event because plaintiffs did not request inspection of · a record of an "official action," as plaintiffs concede.

### C.   Failure to Respond to Plaintiffs' September 2011 Request

■ ¶ 30 Subsection 24–72–305(6) of the CCJRA provides:

If the custodian denies access to any criminal justice record, the applicant may request a written statement of the grounds for the denial, which statement shall be provided to the applicant within seventy-two hours, shall cite the law or regulation under which access is denied or the general nature of the public interest to be protected by the denial, and shall be furnished forthwith to the applicant.

¶ 31 In September 2011, plaintiffs made a request under this subsection. But the City failed to respond. Testimony at the hearing indicated that the failure to respond was an oversight resulting from a turnover in personnel. The district court found that the City's error was "purely unintentional and without malice or ulterior motive." Hence, although noting that the oversight "cannot be condoned ... especially where there is [a] legal obligation to respond promptly," the court declined to impose sanctions for the error.

¶ 32 On appeal, plaintiffs assert that the district court should have assessed penalties, attorney fees, and court costs as sanctions for the violation of subsection 24–72–305(6). This question appears to be one of first impression. We disagree with plaintiffs because subsection 24–72–305(6) does not prescribe sanctions for a custodian's failure to comply with that subsection. And subsection 24–72–305(7) does not allow sanctions for a violation of subsection 24–72–305(6). As explained, subsection 24–72–305(7) authorizes attorney fees and court costs *only if* the

the custodian's decision, we decline to address such a challenge because it was not adequately preserved in the district court and not adequately

presented on appeal. *See Barnett*, 252 P.3d at 19; *People v. Scearce*, 87 P.3d 228, 231 (Colo. App.2003).

court finds that the custodian's denial of inspection was actually improper (as well as arbitrary or capricious). Subsection 24–72–305(7) authorizes penalties *only if* the custodian's denial of inspection of a record of an official action was improper (as well as arbitrary or capricious).

¶ 33 We understand plaintiffs' frustration with the City's failure to comply with subsection 24–72–305(6). Like the district court, we do not condone the City's error—for which Mr. Guzman expressed regret. But the General Assembly has not prescribed a civil remedy for a violation of subsection 24–72–305(6).[6] And we cannot read such a remedy into the statute. *See, e.g., Scoggins v. Unigard Ins. Co.*, 869 P.2d 202, 205 (Colo. 1994) ("We will not judicially legislate by reading a statute to accomplish something the plain language does not suggest, warrant or mandate.").

¶ 34 Thus, we conclude that the district court did not err in denying plaintiffs' request for penalties, attorney fees, and costs.

IV. Conclusion

¶ 35 The order is affirmed.

JUDGE J. JONES and JUDGE FOX concur.

---

**6.** The General Assembly has prescribed a criminal penalty for a violation of the CCJRA under certain circumstances. *See* § 24–72–309, C.R.S. 2013 (a person who willfully and knowingly violates the CCJRA is guilty of a misdemeanor).