Opinion by JUDGE TAUBMAN
¶ 1 In this post-dissolution of marriage proceeding, Stephen A. Finn (husband) requests a stay of the trial court's orders requiring him to pay Kelleen Sullivan Finn (wife) certain sums of money and return her artwork and other personal property. We deny the motion.
I. Background
¶ 2 Husband and wife married on June 8, 2011, and entered into a marital agreement. Wife filed for dissolution in 2015.
¶ 3 In March 2016, the trial court issued a lengthy, detailed written order that directed husband to make certain payments to wife within twenty days. In addition to the husband's obligation to pay wife $20,000 per month in maintenance for the number of months the two were married, these payments included: (1) the prorated sum of $451,923 for a partial year of marriage, as established in the marital agreement; (2) $37,878 for the pre-petition joint living expenses paid by wife that should have been paid by husband under the marital agreement; (3) $36,000 for wife's post-petition living expenses; and (4) obligations under the health insurance policy requested by wife and maintained by husband. In addition, wife received a vehicle and all of her artwork and art supplies, with the exception of eight paintings identified by the court as husband's property.
¶ 4 Husband filed a motion for post-trial relief pursuant to C.R.C.P. 59 and 60. The trial court denied the motion, with the exception of correcting a clerical error. Husband then appealed. He also filed a motion with the trial court to stay the court's orders pursuant to C.R.C.P. 62(b) and (d), and requested approval of his supersedeas bond, *1169 both of which the court denied without explanation.
¶ 5 Husband now seeks a stay from this court pursuant to C.A.R. 8. Specifically, he seeks to stay the trial court's order requiring him (1) to pay wife $451,923 as required by article 4.2 of the marital agreement; (2) to return wife's artwork; (3) to return all items of wife's personal property, except wedding gifts, and those items wife agreed were husband's separate property; (4) to pay $37,878 in pre-petition expenses; and (5) to pay $531,429.81 of wife's attorney fees.
¶ 6 The total amount of the judgment that husband seeks to stay is $1,021,230.81. When multiplied by 125%, as required by C.R.C.P. 121, section 1-23(3)(a), the supersedeas bond amount necessary for a stay is $1,276,538.51. Husband presented a redacted copy of a cashier's check in that amount and represented that his counsel will deposit the check with the court if his motion for stay is granted.
¶ 7 Upon consideration of both parties' pleadings concerning the motion for stay, we ordered the parties to file supplemental briefs addressing: (1) whether the factors articulated in Romero v. City of Fountain , 307 P.3d 120, 122 (Colo. App. 2011), apply to motions seeking to stay a judgment and, in particular, a judgment that contains a nonmonetary component; (2) the precise scope of the stay sought;[1] and (3) the apparent failure in the motion for stay to assign any monetary value to the artwork and items of personal property.
¶ 8 Husband contends that the Romero factors do not apply to monetary judgments. Rather, he argues that he should receive a stay automatically upon posting a bond in our court. Wife, on the other hand, contends that Romero applies to the two nonmonetary orders and that Romero should apply to monetary judgments as well. Husband contends that the objects subject to the nonmonetary order must be valued, whereas wife contends that they are invaluable and thus cannot be valued.
¶ 9 We conclude that only three of the four Romero factors apply in this case. However, for the reasons stated below, we further conclude that husband has failed to demonstrate that he is entitled to a stay and thus deny his motion.
II. Application of Romero
¶ 10 Husband contends that Romero does not apply to this case because it involved a request to stay an order denying injunctive relief, while the request in this matter relates to a stay of a monetary judgment, not an injunction. He argues that his posting of a bond should entitle him to an automatic stay of the proceedings. While we conclude that one of the Romero factors does not apply to this case, we also determine that posting a bond is a necessary but not sufficient condition to enable a party to obtain a stay in a dissolution of marriage case. Applying the proper test, we conclude that husband has not demonstrated that he is entitled to relief.
A. Applicable Law
¶ 11 Stays pending appeal are controlled by C.A.R. 8(a), which provides in relevant part:
(1) ... A party must ordinarily move first in the district court for the following relief:
(A) a stay of the judgment or order of a district court pending appeal;
(B) approval of a supersedeas bond; or
(C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending.
*1170 (2) ... A motion for relief under Rule 8(a)(1) may be made to the appellate court....
...
(B) The motion must ... include:
(i) the reasons for granting the relief requested and the facts relied on....
¶ 12 "A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issuance depends upon the circumstances of the particular case." Romero , 307 P.3d at 122.
¶ 13 Romero involved a motion to stay an order denying an injunction. The Romero court noted an absence of Colorado case law guiding courts on whether to grant or deny a motion to stay an order for nonmonetary relief like an injunction. 307 P.3d at 122. The court adopted the "traditional standard" from the federal courts and determined that whether to issue a stay under C.A.R. 8 in such cases depends on a four-factor test: (1) whether the moving party has made a strong showing that it is likely to prevail on the merits; (2) whether the moving party will be irreparably injured absent a stay; (3) whether other interested parties will be harmed by the stay; and (4) whether the public interest will be served by granting a stay. Id.
¶ 14 According to one treatise, stays in family law cases should be granted only if a "grievous injustice" has resulted from the trial court's judgment and "irremediable harm and prejudice" will ensue if a stay is not granted. See Arnold H. Rutkin, Family Law and Practice Treatise § 58.04[2] (2012); see also § 14-10-102(2)(b), C.R.S. 2016 (noting underlying purpose of dissolution of marriage statutes to mitigate harm to spouses caused by the dissolution process). Further, no Colorado authority supports the conclusion that posting a bond will automatically entitle a party to a stay, in a dissolution of marriage proceeding. See Romero , 307 P.3d at 122 (a stay is not a matter of right).
¶ 15 In Muck v. District Court , 814 P.2d 869 (Colo. 1991), the supreme court held that the trial court erred in granting a stay in a dissolution of marriage case where no bond was posted and thus, absent a bond, a stay could not be granted. Muck announced that "a supersedeas bond [is generally seen] as a prerequisite for obtaining an order staying execution of the judgment." 20 Frank L. McGuane Jr. & Kathleen A. Hogan, Colorado Family Law and Practice § 45:7 at 873 (2d ed. 2009). However, it did not address whether posting a supersedeas bond, without more, is sufficient to secure a stay of orders relating to division of marital and separate property in a dissolution of marriage appeal.
B. Analysis
¶ 16 We conclude that posting a supersedeas bond alone is insufficient. In commercial cases, a supersedeas bond alone is sufficient to obtain a stay of a monetary judgment. See Monks v.Hemphill , 119 Colo. 378, 203 P.2d 503 (1949) ; see also Hart v. Schwab , 990 P.2d 1131, 1133-34 (Colo. App. 1999) (citing Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n , 636 F.2d 755, 760-61 (D.C. Cir. 1980) ). However, the policies furthered by the Uniform Dissolution of Marriage Act, sections 14-10-101 to - 133, C.R.S. 2016, "include the dividing of assets equitably and mitigating the harm to spouses and their children caused by the dissolution." In re Marriage of Plesich , 881 P.2d 379, 381 (Colo. App. 1994) ; see §§ 14-10-102(2)(b), - 113(1), C.R.S. 2016. In addition, under the Uniform Premarital and Marital Agreements Act, sections 14-2-301 to - 313, C.R.S. 2016, principles of equity supplement the law applicable to marital agreements. § 14-2-305, C.R.S. 2016.[2]
¶ 17 Accordingly, we conclude that a court considering a stay request must ensure that harm to the nonmovant spouse is not likely to occur if a stay is granted. Therefore, we determine that a court considering a stay of that part of a judgment involving marital and separate property must consider the first three Romero factors because neither the Romero test nor an automatic stay upon posting a bond provides a sufficient basis for granting a stay. In other words, we must consider whether the moving party has *1171 made a strong showing that he or she is likely to prevail on the merits, whether the moving party will suffer irreparable harm if a stay is not granted, and whether other interested parties-primarily the other spouse-would be harmed by granting a stay.
¶ 18 The fourth Romero factor-harm to the public interest-is not ordinarily relevant in the context of a dissolution of marriage proceeding. This is so because dissolution of marriage proceedings resolve private disputes between two parties.
¶ 19 We first consider husband's motion for a stay in light of whether he has made a strong showing that he is likely to prevail on the merits. We conclude that he has not set forth even a cursory argument as to why his appeal regarding any of these orders is likely to succeed on the merits. As with an injunction, "the movant is always required to demonstrate more than the mere 'possibility' of success on the merits." Romero , 307 P.3d at 123 (quoting Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog , 945 F.2d 150, 153-54 (6th Cir. 1991) ).
¶ 20 Husband has only stated that he "will advance" arguments regarding the trial court's awards of property to wife. Because the record indicates that husband is obligated to make these payments pursuant to a marital agreement, he must demonstrate why his making these payments would be contrary to the provisions of the marital agreement. Because husband has not done so, he cannot establish that he is likely to prevail in his appeal. Accordingly, he has not met his burden to show that he is entitled to a stay of the trial court's orders pending appeal.
¶ 21 Husband also contends that he faces "clear" irreparable harm if a stay is not granted, but his arguments are again unpersuasive. He alleges that wife can make no showing that she can repay the judgments in the event of a reversal in husband's favor. However, the detailed findings of the trial court in the permanent orders-which, notably, husband is not challenging-specifically note the improved financial resources of the wife:
One month's maintenance payment of $20,000 is higher than the yearly income [wife] earned in any year prior to her marriage. By the time maintenance payments are completed, she will have received almost one million dollars in maintenance. In addition ... she has income from other sources totaling $6,500 or more a month. She also has a paid for vehicle, paid residential expenses [of] $36,000 for one year and health insurance for life.... In addition to the maintenance payments, [wife] is leaving the marriage with many times over the assets she brought into the marriage including about two million dollars in real estate, [a] million dollars or more in jewelry and furs and the majority interest in the winery. The court finds [wife's] financial circumstances upon leaving the marriage are substantially better than she enjoyed prior to the marriage.
¶ 22 Contrary to husband's argument, the record reflects that even though wife may need to use the judgment amounts in the continuing litigation, she should have significant resources after the dissolution and should be able to repay the judgments if husband obtains a reversal. Thus, husband has not established that he will suffer irreparable harm if a stay is not granted.[3]
¶ 23 Finally, we conclude that wife will be harmed by the issuance of a stay because she would be denied benefits for which she negotiated in the marital agreement. See § 14-10-113(1).
¶ 24 Regarding the nonmonetary orders, we also apply the first three Romero factors to determine whether a stay is appropriate. Again, husband's inability to show the likelihood of success on the merits is most persuasive in denying a stay. As with the monetary orders discussed above, we similarly conclude that husband will not suffer irreparable harm and that wife would be harmed if a stay were granted.
¶ 25 In sum, because husband has not demonstrated a likelihood of success on the *1172 merits, irreparable harm to him, or harm to wife, we deny his motion for a stay.
III. Bond Increase
¶ 26 Husband further contends that the trial court's July 22, 2016, order implies that he may obtain a stay of the nonmonetary orders requiring him to return wife's paintings and personal property if he increases the amount of his supersedeas bond. He contends that all of the items taken together have a market value of less than $100,000, and he asserts that he is willing to post bond for these items as if they were worth two times that amount, or $200,000. He suggests that a bond of $250,000 will fully protect wife in the event a division of this court affirms the trial court's order regarding these items. Wife contends that these items are irreplaceable and of sentimental value such that they cannot be valued or bonded.
¶ 27 Reviewing the lengthy findings of the trial court's permanent orders, we conclude that the paintings, art supplies, and other personal property were not valued because the trial court determined that they were wife's separate property. In a dissolution of marriage proceeding, the trial court sets apart the parties' separate property and then values and divides the marital property. See § 14-10-113(1). Thus, the trial court did not err by not valuing these items.
¶ 28 Furthermore, because we conclude that husband is not entitled to a stay for the reasons noted above, we need not address whether he would be entitled to a stay if he were to increase his bond to include his estimate of the value of the nonmonetary items. Therefore, we conclude that husband is not entitled to stay of the trial court's orders.
IV. Conclusion
¶ 29 Accordingly, the stay request is denied.
JUDGE DAILEY and JUDGE FREYRE concur.

After the parties married, husband acquired wife's mother's ownership interests in the family winery. When dissolution of marriage proceedings between husband and wife began, the trial court prohibited husband from "transferring, encumbering, concealing or in any way disposing of [the winery]." At the close of the dissolution proceedings, husband's winery interests reverted to wife. A flurry of litigation and legal action ensued, mostly initiated by husband. The litigation regarding the ownership of the winery continues in federal court in California. In her briefs, wife contends that husband's motion seeks to stay the award of husband's winery interests to wife (decided in a separate trial court order in October 2015) and that we should deny the current motion for stay. However, husband affirmatively stated in his supplemental brief that he is not seeking a stay of any of the orders related to the winery.

Although section 14-2-305, C.R.S. 2016, was not in effect at the time that the marital agreement in this case was created, it indicates current legislative intent concerning marital agreements.

In some dissolution of marriage cases, a party may establish irreparable harm if a relocation order involving children is not stayed or if a child support or maintenance order challenged on appeal would burden a payor spouse and is not likely to be recouped if the order is reversed on appeal. See Arnold H. Rutkin, Family Law and Practice Treatise § 58.04[2] (2012).